Harley Lee PHILLIPS, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Feb. 18, 1972.

Certiorari Denied by Supreme Court
May 1, 1972.

———◆———

Richard Hopson, Kingsport, for plaintiff in error.

David M. Pack, Atty. Gen., Charles W. Cherry, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, for defendant in error.

OPINION

OLIVER, Judge.

Represented by retained counsel, Phillips was convicted in the Criminal Court of Sullivan County under two separate indict-

ments, one charging him with assaulting Carolyn Sue Paris by stabbing her with a knife with intent to commit first degree murder, and the other charging that on the same day he raped the same woman. The jury assessed his punishment at imprisonment for three years in the penitentiary for the felonious assault and at 15 years in the rape case. The trial judge pronounced sentence and entered judgment accordingly and ordered the two sentences to be served consecutively. Unsuccessful in his motion for a new trial, the defendant has duly perfected his appeal in the nature of a writ of error to this Court and is represented here by court-appointed counsel, having been adjudged an indigent at the hearing upon his new trial motion.

■ In his Assignments of Error here the defendant reiterates the alleged errors raised in his motion for a new trial. His first five Assignments contest the sufficiency of the evidence. In summary and in effect he contends by these Assignments that the evidence preponderates against the verdicts and in favor of his innocence. The principles to which we must adhere in reviewing a record when such Assignments are advanced have been enunciated so very many times by our Supreme Court and this Court that they are now common knowledge in the legal profession. The jury's verdict of guilt, approved by the trial judge, strips the defendant of the presumption of innocence, with which the law clothed him throughout his trial, and he stands before this Court presumed to be guilty and he has the burden here of demonstrating that the evidence preponderates against the verdict and in favor of his innocence. The verdict so approved accredits the testimony of the prosecution witnesses and establishes the State's theory of the case. We may review the evidence only to determine whether it preponderates against the verdict, and in doing so we are required to take the verdict as having established the credibility of the State's witnesses. The verdict may not be overturned on the facts unless the evidence clearly preponderates

against it and in favor of the innocence of the accused. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Cr.App., 425 S.W.2d 799; Morelock v. State, Tenn.Cr.App., 460 S.W.2d 861.

■ This rule governing appellate review of criminal convictions makes unnecessary and, indeed, inappropriate, any detailed discussion of the evidence pro and con. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

We summarize the material evidence. Between 8:30 and 9:00 p. m. on Wednesday, August 12, 1970, 22-year-old Nurse's Aide Carolyn Sue Paris parked her car in a department store parking lot in Kingsport (Sullivan County) and started in the store to do some shopping. Walking across the parking lot she passed the defendant's parked automobile in which he and Johnny Berry were sitting. She had never seen either of the men before. Berry spoke to her and told her his name and she spoke and told him her first name. In response to his inquiry, she told him she was going into the store. When she finished her shopping and started back to her car Berry and the defendant were still sitting there in the parking lot. Berry asked her where she was going and she said she was going home. Berry asked her if she could go out and have a coke with him and she agreed. He got in her car and she drove to where she lived (she rented a room in a private home) and the defendant followed in his car. Incredible as it may seem, after parking her car she got in the car with these two total strangers, and then began a wild escapade which lasted until the following Saturday night.

With the defendant driving, they first went to Johnson City, where they stopped at the Golden Tiki—a beer tavern—and the defendant went inside and returned in a few minutes and said that a girl friend employed there could not accompany them because she had to work. From there they

drove to a remote area in Carter County referred to as the Watauga rock quarry, where they got out to walk around and the defendant tried two or three times to put his arm around Carolyn and she returned to the car. With her and Berry in the rear seat, the defendant then drove up into the mountains, asking Berry various vulgar and suggestive questions concerning Carolyn, and finally stopped about midnight at an isolated point in Sullivan County where the road had been widened at a small clearing to permit vehicles to pull off. There Berry got out of the car. The defendant then opened one of the rear doors of the car and ordered Carolyn to get out and remove her clothing. She took her shoes off and picked them up and started running down the road. When she fell he overtook her and led her by her hair back to the car. Disregarding her crying and pleading, Phillips ripped the buttons from her blouse, tore off her brassiere, pushed her into the back seat of the car and forced her to lie down by striking her in the face, held her hands and tore off her shorts, then removed her panties and her sanitary belt and napkin and threw them out of the car window, and then forcibly raped her, took her head in his hands and forced her into a loathsome act of perversion, put all the remainder of her clothes in the front seat and refused to give them to her, and left her nude on the back seat. He raped her again before Berry returned. Berry and the defendant then got in the front seat. After he had driven a short distance the defendant started talking about getting rid of her, and said that he would rather be charged with murder than with rape. The above-mentioned items which Phillips threw out of the car window were found by the investigating officer when Berry took him to the scene, and were admitted in evidence.

Notwithstanding Berry's remonstrations and her crying, Phillips reached over the back of the front seat and cut her on the leg with his knife—not seriously as it turned out. It was then near daylight Thursday morning and the defendant drove them further into the mountains where they remained until about noon. Both men were drinking. They then drove to the Silver Spur in Johnson City where Berry went in and bought a six-pack of beer while the defendant remained in the car with Carolyn. She was dressed only in Berry's shirt and what remained of her torn shorts, and was afraid to try to get out of the car and escape. Berry saw a friend of his, Jessie Presnell, and he accompanied them as they drove back through the mountains and stopped about nightfall in a wooded area beside a lake in Sullivan County. Berry had bought a bar of soap for the purpose of bathing in the lake, and while he and Presnell went swimming the defendant took Carolyn out of the car and started up the hill through the woods with her although she was crying and pleading with him to let her alone. When she began yelling for Berry to help her, the defendant struck her and she fell and he put his foot on her head and told her to stop calling for Berry. When Berry yelled at the defendant to stop hitting Carolyn and started up the hill to where they were, Phillips cut her on the stomach with his knife. Although Berry persuaded Phillips to put his knife away and warned him to stop striking her, Phillips took her on over the hill and when she began crying and begging him not to molest her he struck her again. When Berry again responded to her call for help and reminded him that he had warned him about striking her, Phillips stated that he had to strike her because she wouldn't give in. When Berry returned to the lake Presnell was missing and he yelled to Phillips that the man had drowned. After they found Presnell in the automobile, the defendant took Carolyn into the woods again and had intercourse with her and then forced her into a foul act of perversion—as he had done after he raped her the first time Wednesday night. When they came out of the woods he asked her if she could swim and when she replied that she could not he said that he was going to see whether she could or

not. When Berry intervened, Phillips repeated his earlier assertion that he would rather be charged with murder than with rape and then cut her in the side and on one hand with his knife. He told Berry that if he released her she would go straight to the police, and that he was going to kill her and put her in the lake. Presnell disappeared through the woods. During this ordeal at the lake Carolyn lost her shoes; they and Berry's bar of soap were found by the investigating officer when Berry retraced their route with him, and those items were admitted in evidence.

The other events in this tragic episode occurred outside of Sullivan County. For this reason we deem it unnecessary to detail those incidents except to mention that the three returned to the Silver Spur in Johnson City late Thursday night and Phillips and Berry took Carolyn inside for a hamburger (she was clad only in Berry's shirt and a pair of his pants he had obtained for her); joined there by Phillips' friend William Joe Peeler, they returned to the mountains; early Friday morning Peeler took them to his brother's home in Johnson City where he lived alone and Berry appropriated and gave to Carolyn a pair of Peeler's sister-in-law's slacks, and they all cleaned up and ate and spent most of the day there; after buying more beer and whiskey at the Silver Spur, they repaired to a barn in Carter County near Elizabethton, after the defendant had been to his home to get blankets and food, and they all spent the night in the barn and remained there until late Saturday afternoon; during the night in the barn, Carolyn willingly submitted to Berry because he had befriended her and had made some effort, albeit apparently minimal and half-hearted and ineffectual, to protect her from Phillips; late Saturday afternoon, after Carolyn and Berry promised Phillips that she would not disclose or report what had transpired, he agreed to let her go home and drove to the bus terminal in Johnson City where she was released. She immediately made full disclosure to a nurse

friend and co-worker whom Berry called to pick her up at the bus terminal, and from this friend's home in Kingsport the police were called.

Testifying as a witness in his own behalf, the defendant said he and Berry had been drinking all day Wednesday before they got with Carolyn and continued drinking heavily during all their meanderings already related, admitted that he attempted to remove Carolyn's clothing and that he tore some of her clothes off, and that "I laid my arm up on her" at the Watauga rock quarry, and striking her, and that he wanted to have intercourse with her and she refused and they fought, claimed that when he "scooted her pants down" and saw her sanitary belt and realized she was in her menstrual period his desire ended and he desisted without ever achieving an erection, admitted having an argument with Carolyn at the lake and that he struck her and that he and Berry had some words about that, said "It's possible she could have got cut accidentally, but I did not stab her," denied he ever cut her or threatened to kill her, claimed she said she cut her hand on a broken pop bottle at the lake, denied forcing her into acts of perversion, and explained his threat to throw her in the lake by saying he was only talking about going swimming and was "only acting a fool with her."

After being fully advised of his rights by the investigating officer, Phillips stated that on the first occasion in the mountains he caught Carolyn when she ran and took her back to the car by force and stripped off her clothing and underwear, and said that he was on top of her but did not complete penetration.

This record leaves no room for doubt (1) that the defendant completely dominated both Berry and Carolyn during the entire period of their association, or (2) that by physical abuse and intimidation and threats he terrorized her and kept her in constant fear and forcibly raped her three times at isolated places in Sullivan

County, or (3) that after the second and third occasions he threatened to kill her and cut her with his knife—each time stating that he would rather be charged with murder than with rape, or (4) that for all intents and purposes she was under his dominance and control on those three occasions and throughout the entire period and had no practical means or opportunity to escape from him until he decided to release her, and was afraid to try to do so. Each assault upon her with his knife was separate and apart from and after his completed act of forcible intercourse with her. The fact that she appealed to Berry for protection and endeavored to remain near him as much as possible and voluntarily submitted to him on one occasion can avail the defendant nothing. Manifestly, we can only conclude that he has failed to carry his burden of demonstrating here that the evidence preponderates against the verdicts of the jury and in favor of his innocence.

■ There is no substance in the defendant's sixth Assignment in which he complains about admission of testimony concerning his and Carolyn's blood types. She testified without objection on direct examination that hers was type O. Defense counsel asked the investigating officer on cross-examination whether there had been a laboratory examination of stains on two pieces of Carolyn's white shorts found at the lake, and the officer replied that he had a laboratory report. On re-direct examination, without defense objection, the officer related the contents of an FBI laboratory report and it was introduced in evidence. That report, showing the results of examination of two pieces of white cloth and a sanitary napkin, stated that group O blood was identified on the napkin and that the blood stains on the two pieces of cloth could not be conclusively grouped.

In his seventh Assignment it is strenuously insisted that the trial court committed prejudicial error in refusing to permit the defendant's wife to testify concerning his impotency. The question propounded

to her by defense counsel, and which the trial court did not permit her to answer when the State objected, was whether she had any knowledge of the defendant's ability to perform the sexual act during the six months, preceding August 13, 1970. Apart from the jury, after prolonged discussion between counsel and the court, defense counsel formalized for the record the question he wished to ask the defendant's wife:

"Mrs. Phillips, as the wife of Harley Phillips, have you had occasion to have knowledge of, and observe, through the exercise of your marital relations with Mr. Phillips, his ability, or lack of ability, to have an erection during the six months immediately preceding August 13, 1970, during times when Mr. Phillips was under the influence of, or using alcoholic beverages, period."

■ Of course, defense counsel was undertaking to establish that the defendant was impotent and incapable of engaging in normal sexual intercourse, because such impotency in fact is a complete defense in a criminal prosecution for rape. Horton v. Bomar, 335 F.2d 583 (6th Cir. 1964); 75 C.J.S. Rape §§ 19, 59; 23 A.L.R.3rd 1351; 44 Am.Jur., Rape § 39; 1 Wharton's Criminal Law and Procedure (Anderson), Rape § 314.

■ But the difficulty with the defendant's insistence here is that there is no evidence in this record that he was impotent at the times under consideration or at any other time. He did not testify that he was impotent or incapable of normal performance of the sexual act or that he had ever been so incapacitated. His testimony was simply to the effect that his excitement and sexual desire stalled and he did not achieve an erection when he saw that Carolyn was wearing a sanitary napkin and was in her menstrual period. This does not mean that he suffered from general impotency rendering him incapable of coition, or that drinking alcohol produced that effect upon him. In this situation, the

trial judge did not commit error in declining to permit the defendant's wife to testify in response to the proposed question.

■ Contrary to the defendant's eighth and ninth Assignments, which he considers together in his brief and argument, the trial judge carefully instructed the jury concerning every offense embraced by law within the charge of rape (TCA § 39–3701), as well as the offense of attempt to commit rape (TCA § 39–605), the offense of attempting to commit a felony (TCA § 39–603), and the offense of assault with intent to commit first degree murder (TCA § 39–604) and all lesser included offenses, simple assault, assault and battery, and the punishment applicable to all of those offenses. The portion of the District Attorney General's argument referred to, in which he stated that 10 years is the minimum sentence for assault with intent to commit rape (TCA § 39–605), was not exceptionable.

The defendant has withdrawn his 10th Assignment of Error. Ably represented below and here, the defendant has had a fair and impartial trial. The record is free of prejudicial error.

The judgments of the trial court are affirmed.

WALKER, P. J., and O'BRIEN, J., concur.