**L. V. SHOCKLEY, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 8, 1978.

Robert S. Peters, Winchester, for appellant.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, Mike P. Lynch, Asst. Dist. Atty. Gen., Winchester, for appellee.

## OPINION

HAL HARDIN, Special Judge.

L. V. Shockley appeals his conviction for rape, for which he received a ten year penitentiary sentence. He now contends: (1) that the evidence fails to support the jury's verdict, (2) that the trial court improperly applied T.C.A. § 40–2445 to restrict his right to cross-examine and to produce witnesses in his own behalf, (3) that he was unfairly prejudiced by the prosecution's closing argument and the court's refusal to entertain his objections to it, and (4) that the prosecution improperly introduced evidence of other crimes against him. For the reasons set out below, we have determined that the case must be retried.

The appellant's first two assignments challenge the jury's verdict as being contrary to the law and the evidence. The charges in this case were brought by the thirteen year old daughter of Shockley's female co-habitant some four months after the alleged crime. She testified that she did not tell anyone of the occurrence at the time, because the appellant had threatened to hurt her mother. According to her testimony, the rape occurred after she accompanied the appellant to a local body shop to pick up his car, two or three weeks before Christmas in 1974. Discovering the car was not ready, the appellant purportedly drove to Keith Springs Mountain, pulled off the main road, went around to the prosecutrix's side of the car, forced her down on the seat, removed almost all of her clothes, told her he would not take her home unless she submitted, threatened her with his raised fist, and had sexual intercourse with her. The prosecutrix stated that she did not consent, that she struggled, and that the intercourse occurred against her will.

The prosecutrix testified that she became pregnant as a result of this occurrence. A local doctor testified that he examined her

on March 22, 1975, and found her to be approximately three and a half to four months pregnant. Shortly after the pregnancy was discovered, according to the prosecutrix and her sister, the appellant tried to get her to "tell whose child it was," hit their mother and the prosecutrix with a shotgun, set fire to the home, and tried to keep the prosecutrix and her mother from escaping the burning house. (One of the appellant's sons stated that his father was standing at the door of the house after the fire started, but that both the prosecutrix and her mother got out of the house.) A neighbor testified that he went to the appellant's house when the fire was discovered, asked what had happened, and a Shockley boy said that his father had set the fire and then got in the car and left. The neighbor stated that while attempting to put out the fire he saw the appellant drive by the house and stop at an intersection approximately five hundred yards away.

The appellant denied any sexual relations with the prosecutrix. He testified that after going to the body shop and discovering his car was not ready, he and the prosecutrix went to get her a soft drink and candy before returning to pick up his car. On the way home they stopped only once, for two beers and a soft drink. He denied setting the fire in March, and he denied hitting or threatening anyone with a shotgun. According to the appellant, he left the scene of the fire in order to summon the fire department, there being no phone at his house, but upon getting to town was told that the firemen were already on their way. He said that he did not use a neighbor's phone because he was not acquainted with them, although testimony at the trial established that other members of the Shockley household used this same phone on occasion.

Appellant utilizes a two-pronged argument in challenging the sufficiency of the evidence to support the jury's verdict. First, he impliedly asserts that the prosecutrix's testimony is not credible. But by its verdict, the jury settles all conflicts in testimony and in so doing determines the credi-

bility of the witnesses at trial. *Hargrove v. State,* 199 Tenn. 25, 28, 281 S.W.2d 692, 694 (1955); *Tillery v. State,* 4 Tenn.Cr.App. 569, 575, 474 S.W.2d 178, 181 (1971); *Phillips v. State,* 480 S.W.2d 361 (Tenn.Cr.App.1972). In this case the jury obviously determined that the prosecutrix's testimony was more credible than the appellant's.

Secondly, appellant contends that even the evidence most favorable to the State's case does not substantiate the exercise of sufficient force by the appellant or significant resistance by the prosecutrix to support a conviction of rape. But it is not necessary to prove that the rape victim was injured by the use of force, and the victim need only show that reasonable resistance was made given the circumstances of the case. *King v. State,* 210 Tenn. 150, 357 S.W.2d 42 (1962). The determination of whether the appellant used force in the commission of the act and whether the act was sufficiently resisted by the prosecutrix are factual questions for the jury. In this case there was proof from which the jury could find that the appellant threatened to hit the victim if she did not submit and that more vigorous resistance to his demands would have been useless. The appellant has not met his burden on appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963). We therefore overrule those assignments related to the sufficiency of the proof in this case.

In other assignments of error appellant challenges the admissibility of testimony relating to the pregnancy of the prosecutrix and events surrounding the fire. We have been unable to find any Tennessee cases dealing directly with the question of whether evidence of pregnancy is properly admitted in rape prosecutions. However, evidence relating to the presence of sperm in the victim has been held admissible as proof of intercourse in the general period of time that the alleged attack occurred. *Black v. State,* 479 S.W.2d 656, 659 (Tenn. Cr.App.1972). Likewise, evidence of pregnancy would also be relevant as proof of

intercourse in the general period of time that the alleged attack occurred. The fact that neither the precise time of intercourse nor its perpetrator could be determined by evidence of the pregnancy would go to the weight of such testimony and not its admissibility. Courts in other jurisdictions have thus concluded that evidence of pregnancy is admissible as proof of intercourse and as corroborating testimony of the prosecutrix. *Martin v. Commonwealth,* 476 S.W.2d 834 (Ky.1972); *State v. McNeil,* 277 N.C. 162, 176 S.E.2d 732 (1970); *State v. Cross,* 284 N.C. 174, 200 S.E.2d 27 (1973). We think the rule is sound, and we find no error in this regard.

Evidence of the pregnancy is also admissible as the basis for the State's theory of the motivation underlying the alleged attempt to suppress or destroy evidence by setting fire to the house and blocking the passage of the prosecutrix and her mother after the fact of the pregnancy was disclosed. As pointed out in *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451 (1958):

"Then it is a well recognized principle of criminal law that:

'The actions and behavior of accused when charged with the crime, or when confronted with the consequences or with the scene or surroundings of the crime with which he is charged, or when brought before the prosecuting witness for identification, or at the trial, are peculiarly relevant.' In receiving evidence of this kind, it is not easy, if at all possible, for courts to draw any line segregating those acts which to some minds may seem significant of guilt from those which are irrelevant because justifying no such inference. Any *ex post facto* indication by accused of a desire to evade prosecution may be shown as one of series of circumstances from which guilt may be inferred.' "

Although we conclude that the trial court rightfully admitted evidence of the prosecutrix's pregnancy, we think the court erred in preventing the appellant from presenting evidence that he was not the person who impregnated her. The trial court chose to

invoke T.C.A. § 40–2445 over the appellant's objection based on the alleged unconstitutionality of that statute. T.C.A. § 40–2445 provides that evidence of prior consensual sexual activity between the victim and any person other than the defendant shall not be admitted into evidence in rape prosecutions unless (1) consent is raised as a defense and (2) the trial judge, out of the presence of spectators and the jury, finds the evidence relevant.

The appellant's challenge to the constitutionality of T.C.A. § 40–2445 is grounded on its alleged conflict with the confrontation clause of the United States Constitution's Sixth Amendment and Article 1, Section 9 of the Tennessee Constitution. The appellant was apparently prepared to present testimony by another individual concerning the prior sexual conduct of the victim. Such evidence would have been relevant to the defense theory that the prosecutrix's pregnancy was the result of sexual activity with a person other than the appellant. (The introduction of this testimony might also have affected the weight the jury gave to testimony regarding the fire. If the jury could believe that the victim was pregnant through intercourse with another, then the appellant's version of what happened at the fire would become more convincing.) In essence, testimony of other consensual sexual activity by the prosecutrix could conceivably have swung the weight given to the evidence in the appellant's favor.

In the only decision construing T.C.A. § 40–2445, another panel of this Court found it to be constitutional insofar as it prevents the use of prior consensual sexual activity for the sole purpose of attacking the victim's credibility. *See Freeman L. Bell v. State,* unpublished, filed at Jackson, June 30, 1977. As pointed out in *Bell,* T.C.A. § 40–2445 establishes for specific sex-related offenses a rule of evidence similar to the rule adopted by the Supreme Court in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976), i. e., that specific instances of conduct, except those concerning character of truthfulness or untruthfulness, may not be used to attack or support the credibility of a witness. *See* Federal Rules of Evidence, Rule 608(b). But the *Bell* opinion did not consider the question presented in the instant case, that is, whether T.C.A. § 40–2445 may be constitutionally applied where evidence of the prosecutrix's prior consensual sexual activity is used for a relevant purpose other than to contest issues of consent or credibility.

Before the appellant can be denied his constitutional right to cross-examine witnesses and to call witnesses in his own behalf, the competing interest which denies him that right must be closely examined and justified in the context of providing the defendant a fair trial. *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers,* the United States Supreme Court said:

> "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process . . . The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970); *Bruton v. United States,* 391 U.S. 123, 135–137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). It is indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)." 410 U.S. at 294–95, 93 S.Ct. at 1045–46.

The similarities between *Chambers* and the instant case are striking. Chambers, who was charged with shooting a policeman, was barred by Mississippi's "voucher" rule from cross-examining a witness, McDonald, as to whether McDonald had shot the policeman. He was also prevented, by a strict application of the hearsay rule, from calling as a witness in his behalf three men who are told by McDonald that he shot the policeman. In holding that Chambers was denied his due process rights to a fair trial, the United States Supreme Court concluded

that the state policy underlying the voucher and hearsay rules would not be undermined by allowing Chambers to cross-examine McDonald and call the other three witnesses. 410 U.S. at 295–303, 93 S.Ct. 1038. To the contrary, the Court found that whatever benefit might have been gained from applying these rules was far outweighed by its devastating effect on Chamber's defense. Likewise, in the instant case, Shockley was denied the opportunity to ask the prosecutrix whether the act for which he was being charged, the intercourse causing her pregnancy, could have been committed by another person. He was also prevented from calling witnesses who would have testified that they could have been responsible for the act of intercourse which caused her pregnancy.

The ultimate consideration is whether the policy underlying T.C.A. § 40–2445 was aimed at preventing the admission of testimony regarding prior consensual sexual conduct under such circumstances as exist in this case. We are convinced that this was not the purpose behind the enactment of T.C.A. § 40–2445. This statute was enacted to eliminate the unjustified besmirching of a woman's reputation by examining her prior sexual activities when such testimony is of highly dubious relevance to the issue of her later consent or her credibility. The strongest evidence against the appellant is the obvious fact of the prosecutrix's pregnancy and her doctor's testimony that conception could have occurred within the time period she claims to have been raped. Any evidence the appellant could have introduced to prove that his alleged victim was impregnated by another man would certainly be relevant to the issue of his guilt or innocence and would have a negative effect on the weight of testimony against him. Any embarrassment such testimony might cause the prosecutrix is far outweighed by the injustice to the appellant if he is denied fair and adequate confrontation rights in presenting his defense against the rape charge.

Put simply, the question here was not whether the prosecutrix had been rendered unworthy of belief because of prior promiscuity. The question was not whether prior consensual activity with others tended to prove consensual activity with the defendant. Those questions are foreclosed by T.C.A. § 40–2445. The peculiar issue here was whether the defendant, or someone else, was responsible for the pregnancy which the prosecutrix claimed was caused by a rape. We think this question falls outside the operation of T.C.A. § 40–2445 as a matter of public policy, legislative intent, and constitutional mandate.

 Therefore, we hold that the trial judge erred in not permitting appellant to cross-examine the prosecutrix or call witnesses on his behalf for the purpose of proving the prosecutrix's consensual sexual activity during the period in which conception might have occurred. We wish to make it clear that we are not hereby declaring T.C.A. § 40–2445 unconstitutional. Rather we are recognizing that the statute is not controlling in this particular case and that its application must be construed in light of the appellant's due process rights. That the statute was not so construed in the trial of this case constitutes reversible error.

On a related basis, appellant assigns as error prejudicial statements made by the prosecuting attorney during jury argument and the trial judge's action in forbidding counsel for appellant to object to the State's argument.* The district attorney commented on the fact that the appellant

---

\* Before considering these errors it should be noted that the original bill of exceptions submitted to this Court did not contain the jury arguments. However, by motion to suggest diminution of the record, counsel for appellant has certified that his copy of the bill of exceptions did include the jury argument of the Assistant Attorney General as "an integral part of the second volume of the bill of exceptions."

In submitting a certified transcript of the argument of the State attorney, counsel for appellant also submitted an affidavit and certificate of the official court reporter and a certificate of the trial judge. In the interests of justice, and to correct what appears to be only a clerical error, we authorize the filing of this addition to the bill of exceptions pursuant to the authority of T.C.A. § 27–111.

had not called on a certain witness whom he had subpoenaed, thereby implying that the appellant either had a weak case or was suppressing evidence. There is no doubt that when he made this argument the prosecutor was well aware that the witness was prevented from testifying by the judge's ruling on T.C.A. § 40–2445. When the appellant objected that the district attorney was arguing outside the record, finally getting the objection on the record after being told to be seated, the trial judge called down counsel for the appellant, stating: "You don't have to object while he's arguing, I've asked you to be seated and I expect you to remain so."

Not only was the prosecutor's comment prejudicial, but the trial judge was clearly in error in not permitting counsel to enter his objection. It is fundamental that contemporaneous objection must be made in order to preserve the issue on appeal. *Harris v. State,* 3 Tenn.Cr.App. 64, 457 S.W.2d 370 (1970); *Gunter v. State,* 499 S.W.2d 954 (Tenn.Cr.App.1973). Because defense counsel had been effectively silenced, the district attorney was later able to assert as part of his argument that the appellant got "his kicks out of taking advantage of young children."

 We recognize that trial judges are given wide discretion in controlling the argument of counsel, and their actions will not be reviewed absent abuse of that discretion. *White v. State,* 210 Tenn. 78, 356 S.W.2d 411 (1962); *Smith v. State,* 527 S.W.2d 737 (Tenn.1975). But it is an abuse of judicial discretion to allow the prosecutor, over objection, to inflame the jury with intemperate argument, not predicated on evidence introduced during the trial of the case, an not pertinent to the issue tried. *Russell v. State,* 532 S.W.2d 268 (Tenn. 1976). Improper conduct in closing argument by the prosecuting attorney warrants reversal of the conviction if such conduct could have affected the verdict to the prejudice of the defendant. *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965); *King v. State,* 1 Tenn.Cr.App. 101, 430 S.W.2d 810 (1968).

 We conclude that the district attorney's statements, as well as the trial judge's prohibition on objections by the defense counsel during jury argument, were so highly prejudicial that they may well have affected the verdict to the prejudice of the appellant. Certainly we are unable to say beyond a reasonable doubt that the improper argument and the trial court's failure to control it did not affect the outcome of the trial. The resulting error is therefore reversible in nature. *Judge v. State,* 539 S.W.2d 340 (Tenn.Cr.App.1976).

Finally, the appellant contends that the trial court improperly allowed evidence of other crimes to be introduced against him, in violation of the well recognized rule that proof of unrelated crimes committed by an accused is inadmissible to show that he is guilty of the crime charged, even though it is similar in nature. *Mays v. State,* 145 Tenn. 118, 238 S.W. 1096 (1921). The specific evidence in question was the testimony of the prosecutrix's sister that the appellant had sexually assaulted her in an automobile sometime during 1974. Upon cross-examination, her testimony was substantially impeached by proof that she had given inconsistent testimony regarding this alleged occurrence at an earlier trial.

The trial judge allowed this testimony on two grounds, first, that it was proper rebuttal to impeach the appellant's testimony (in which he denied that he had ever engaged in sexual conduct with the sister), and, second, that it was admissible to establish the appellant's propensity to commit the crime for which he was being tried.

 Whatever the state of the law at the time with regard to the first ground, it is clear that under current law the trial court's ruling on this point would have been wholly erroneous. The decision in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976), reported since the trial of the case before us, requires that in instances where specific acts of conduct not resulting in criminal convictions are offered to impeach, the trial court must determine: (1) that they are "probative of truthfulness or untruthful-

ness" and (2) that "the probative value of such evidence outweighs its prejudicial effect." *Id.* at 388, 390. The *Morgan* rule further provides that extrinsic evidence of specific acts may not be introduced and that "When such cross-examination is permitted the answer of the witness shall be conclusive." *Id.* at 390. It follows that under *Morgan* the specific act in question would not have been considered probative and, in any event that the appellant's denial would have foreclosed further impeachment inquiry into his alleged attack on the prosecutrix's sister. Thus the rebuttal testimony would have constituted error. The *Morgan* rule will, of course, be applicable to this case upon retrial.

▆▆▆ The propensity question raises an issue which, unfortunately, does not lend itself to such a ready solution. The appellant correctly points out that the general rule prohibits propensity evidence to establish guilt, i. e. that the accused has committed bad acts in the past, from which the trier of fact may conclude that he or she is the kind of "bad person" likely to commit the crime charged. While it is conceded that such evidence has logical relevancy, *see generally* E. Cleary, *McCormick on Evidence* § 190 (2d ed. 1972); D. Paine, *Tennessee Law of Evidence* § 3 (1974), it has generally been felt that the danger of prejudice involved in such an inquiry outweighs the probative value to be gained from it. However, evidence of other crimes by the accused has been permitted when it is relevant to certain material issues at trial. These exceptions to the general rule are, for the most part, well recognized. They include proof of (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common schéme or plan for the commission of two or more crimes so related to each other than the proof of one tends to establish the others, and (5) the identity of the accused as the perpetrator of the crime with which he or she is charged. *Carroll v. State,* 212 Tenn. 464, 477–78, 370 S.W.2d 523, 529 (1963).

Some scholars have noted a trend toward the emergence of a sixth category: proof of a propensity toward the commission of sex crimes. In jurisdictions recognizing such an exception to the general rule, evidence has been limited to illicit sexual relations with the particular person involved in the crime on trial. *McCormick, supra* at p. 449. *See also* Paine, *supra* at p. 9. But there is dictum in at least one Tennessee case which would extend the rule in cases involving sexual perversion to cover like perverted sex acts with other victims also. *Carroll v. State, supra* at 530.

Despite the dictum in *Carroll,* the sex crimes exception apparently has not gained wide endorsement in Tennessee. *See, e. g., Dix v. State,* 4 Tenn.Cr.App. 412, 472 S.W.2d 243 (1971), in which a panel of this court held that evidence of a previous sexual assault by the defendant on his stepson was not admissible to prove that he committed a sexual assault on his son.

We are reluctant to adopt and apply the sex crimes exception here, because we recognize the inherently inflammatory nature of this kind of evidence. Whatever the probative value of such proof on balance the danger of prejudice may require the sacrifice of relevant evidence in order to assure fairness to the criminal defendant. As one scholar has noted:

> . . . some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to over mastering hostility. (Footnotes omitted).

*McCormick, supra* at p. 453.

▆▆▆ Applying these factors, we conclude that the testimony of the prosecutrix's sister should not have been allowed on the "propensity" basis articulated by the trial court. Although it might be possible

to allow other crimes evidence of this nature in order to establish the identity of the appellant as the impregnator of the prosecutrix, the evidence before us fails to establish a common pattern of conduct so unusual and distinctive or a method of operation so nearly identical as to make the prior assault admissible under this exception. It follows that evidence of the other crime should not have been admitted on the issue of the appellant's guilt. Upon retrial, this proof should be reviewed by the trial judge at a jury-out hearing with utmost caution and discretion, in view of the potential for prejudice and thus for reversible error.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

RUSSELL and DAUGHTREY, JJ., concur.