VERNON SUMMITT, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 14022

March 26, 1985 697 P.2d 1374

*Morgan D. Harris,* Public Defender, and *E. Lee Thomson,*
Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J.
Miller,* District Attorney, and *James Tufteland,* Deputy District
Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury found appellant Vernon Summitt guilty of two counts of sexual assault. He seeks reversal of his judgment of conviction asserting several assignments of error, only one of which we find to have merit: that the district judge erred in excluding testimony centered about a prior similar sexual experience of the victim. Accordingly, we reverse and remand the case for a new trial.

A grand jury indicted Summitt for three counts of sexual assault committed on a six year old child. A count charging sexual intercourse was dismissed before the trial because of the state's failure to preserve evidence. Summitt was tried and convicted of the remaining counts of cunnilingus and fellatio.

At the jury trial Summitt sought to introduce evidence of a prior sexual experience of the victim which included intercourse, fellatio and the fondling of the victim's genitalia. The prior assault had occurred two years before the crime in issue, in the same trailer park, and involved the same victim and her nine year old girl friend, who was also a witness in the instant case. Summitt offered the testimony to show that the young victim had had prior independent knowledge of similar acts which constituted the basis for the present charge.

The district judge denied Summitt's offer on the ground that the "rape victim shield law," Nevada Revised Statute section 50.090[1], barred the admission of such evidence. We turn to the construction of the statute.

---

[1]NRS 50.090 states in pertinent part:

> In any prosecution for sexual assault . . . the accused may not present evidence of any previous sexual conduct of the victim of the crime to challenge the victim's credibility as a witness unless the prosecutor has presented evidence or the victim has testified concerning such conduct, or the absence of such conduct, in which case the scope of the accused's cross-examination of the victim or rebuttal shall be limited to the evidence presented by the prosecutor or victim.

In 1977 Nevada joined forty-five states and the federal government in passing a "rape shield" statute, limiting inquiry into the sexual history of a complaining witness in a rape or sexual assault case. *See* J. A. Tanford and A. J. Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544, 544 (1980).

Such laws have generally been designed to reverse the common law rule applicable in rape cases, that use of evidence of a female complainant's general reputation for morality and chastity was admissible to infer consent and also to attack credibility generally. Thus, for example, it had been held: "It is a matter of common knowledge that the bad character of a man for chastity does not even in the remotest degree affect his character for truth, when based upon that alone, while it does that of a woman." State v. Sibley, 33 S.W. 167, 171 (Mo. 1895), quoted in State v. Brown, 636 S.W.2d 929, 933 n. 3 (Mo. 1982), *cert. denied sub nom.,* Brown v. Missouri, 103 S.Ct. 1207 (1983). Such statutes as Nevada's have been described as "directed at the misuse of prior sexual conduct evidence based on this antiquated and obviously illogical premise." State v. Hudlow, 659 P.2d 514, 519 (Wash. 1983). *See also* People v. McKenna, 585 P.2d 275, 278 (Colo. 1978). An additional purpose of such statutes is " 'to protect rape victims from degrading and embarrassing disclosure of intimate details about their private lives.' " 124 Cong. Rec. at H 11945 (1978), quoted in Doe v. United States, 666 F.2d 43, 45 (4th Cir. 1981). Finally, "[t]he restrictions placed on the admissibility of certain evidence by the rape-shield laws will, it was hoped, encourage rape victims to come forward and report the crimes and testify in court protected from unnecessary indignities and needless probing into their respective sexual histories." State v. Lemon, 456 A.2d 261, 264 (R.I. 1983).

In construing Nevada's "shield law," we must be mindful of these legislative purposes. Equally important is the rule that "[a] statute should, if it reasonably can, be so construed as to avoid any conflict with the constitution." State v. Woodbury, 17 Nev. 337, 356, 30 P. 1006, 1012 (1883). *See also* Anaya v. State, 96 Nev. 119, 606 P.2d 156 (1980); Milchem, Inc. v. District Court, 84 Nev. 541, 445 P.2d 148 (1968).[2]

---

[2]Although counsel has not raised the constitutional issue on appeal, the issue of statutory construction has been preserved. In view of the fundamental importance of the confrontation clause to a defendant's right to a fair trial and the fact that the appellant-defendant did preserve the question of the proper application of the statute for our consideration, we shall consider the constitutional issue. *See* Desert Chrysler-Plymouth v. Chrysler Corp., 95 Nev. 640, 600 P.2d 1189 (1979), *cert. denied,* 445 U.S. 964 (1980); Dias v. State, 95 Nev. 710, 601 P.2d 706 (1979); Davies v. State, 95 Nev. 553, 598 P.2d 636 (1979).

A defendant's rights to present witnesses in his own behalf, to confront and to cross-examine the witnesses against him are fundamental rights, secured by the Sixth Amendment, and applicable to the states through the Fourteenth Amendment. Chambers v. Mississippi, 410 U.S. 284 (1973); Washington v. Texas, 388 U.S. 14 (1967); Pointer v. Texas, 380 U.S. 400 (1965). The United States Supreme Court has held that the right to confront and cross-examine witnesses may, in appropriate cases, bow to "accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. at 295. But, the Court has cautioned, "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Id.*

Thus in Davis v. Alaska, 415 U.S. 308, 320 (1974), the court held that the legitimate interest of the state in protecting from public scrutiny the juvenile record of a prosecution witness could not "require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." The court examined the particular interests of the state and the defendant, noting that defense counsel made it clear that he would not introduce the juvenile record as a "general impeachment of [the witness's] character as a truthful person," but rather to show specifically that the witness was on probation for a similar crime, which may have provided a motive for shifting blame to the defendant. *Id.* at 311. Similarly in this case, we have a defendant who seeks to introduce evidence which it is the general policy of the state to protect, but which the defendant seeks to use for the sole and limited purpose of challenging the witness's credibility by dispelling an inference which the jury may well draw otherwise from the circumstances, that a six year old child would be unable to describe the occurrences in her testimony unless they had in fact taken place.

Other courts confronted with the necessity of accommodating the competing interests of complaining witnesses and defendants in such cases have concluded that rape shield statutes should be construed and applied so as to uphold the constitutional rights of defendants, while creating the least possible interference with the legislative purpose reflected in the statutes. *See, esp.,* Bell v. Harrison, 670 F.2d 656 (6th Cir. 1982) (Tennessee statute); State v. Blue, 592 P.2d 897 (Kan. 1979); Commonwealth v. Joyce, 415 N.E.2d 181 (Mass. 1981); State v. Howard, 426 A.2d 457 (N.H. 1981); State v. Jalo, 557 P.2d 1359 (Or.App. 1976); Shockley v. State, 585 S.W.2d 645 (Tenn.Crim.App. 1978); Winfield v. Commonwealth, 301 S.E.2d 15 (Va. 1983); State v. Hudlow, *supra,* 659 P.2d 514 (Wash. 1983).

The holdings of two of these state court decisions apply to the case at bar. In State v. Howard, *supra,* the Supreme Court of New Hampshire considered a statute which purported to preclude any evidence of a victim's consensual sexual activity with persons other than a defendant. In that case, as in this one, the defendant sought to introduce such evidence in order to challenge the young complaining witness's credibility, by showing that she had had other experiences which could explain the source of her knowledge of the sexual activity she described in her testimony. The court determined that in order to uphold the constitutionality of the statute, it would require that a defendant in a prosecution to which the shield law was applicable "must, upon motion, be given an opportunity to demonstrate that due process requires the admission of such evidence because the probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix. Such motion should, of course, be made out of the presence of the jury." 426 A.2d at 461. We are persuaded that this procedure would provide a proper means of deciding, on a case by case basis, whether such evidence should be admitted. *See* Anaya v. State, *supra,* 96 Nev. 119, 606 P.2d 156 (1980).

We agree with the reasoning of the Supreme Court of Washington that in following this procedure, the trial court must undertake to balance the probative value of the evidence against its prejudicial effect, *see* NRS 48.035(1)[3], and that the inquiry should particularly focus upon "potential prejudice to the truthfinding process itself," *i.e.,* "whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis." State v. Hudlow, *supra,* 659 P.2d at 521.

In the instant case the defendant does not seek to impeach the credibility of the complaining witness by a general allegation of unchastity. Rather, the specific evidence was offered to show knowledge of such acts rather than lack of chastity.[4] We agree

---

[3]NRS 48.035(1) reads:

 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.

[4]In the affidavit supporting appellant-defendant's motion for a new trial in the proceedings below, it was asserted that Juror No. 1, Richard L. Linton, after the verdict was rendered, stated to both counsel for the state and the appellant that during the jury's deliberations "the question was posed among the jurors why a girl of such a young age would know of such sexual acts unless they had, in fact, occurred as alleged."

with the ruling of the Supreme Court of New Hampshire in State v. Howard, *supra,* 426 A.2d at 462:

> We believe that the average juror would perceive the average twelve-year-old girl as a sexual innocent. Therefore, it is probable that jurors would believe that the sexual experience she describes must have occurred in connection with the incident being prosecuted; otherwise, she could not have described it. However, if statutory rape victims have had other sexual experiences, it would be possible for them to provide detailed, realistic testimony concerning an incident that may never have happened. To preclude a defendant from presenting such evidence to the jury, if it is otherwise admissible, would be obvious error. Accordingly, a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the prosecutrix has the experience and ability to contrive a statutory rape charge against him.

We also agree, however, that "[i]n the exercise of its sound discretion, the trial court should be mindful of the important policy considerations underlying the rape-shield statute," and accordingly "should limit the admission of evidence of specific instances of the complainant's sexual conduct to the extent that it is possible without unduly infringing upon the defendant's constitutional right to confrontation." *Id.*

Since the remaining evidence of guilt was not strong, and since "[t]he accuracy and truthfulness of [the complaining witness's] testimony were key elements in . . . the case against [defendant]," Davis v. Alaska, *supra,* 415 U.S. at 317, we reverse and remand for further proceedings consistent with this opinion.

SPRINGER, C. J., and GUNDERSON, J., concur.

STEFFEN, J., concurring in part and dissenting in part.

I concur in result with my brethren on the fellatio count but dissent as to the count involving cunnilingus.

I agree that the district court committed reversible error in excluding reference to a prior incident involving the same child-victim. The purposes of the "rape victim shield law" (NRS 50.090) would not have been frustrated by the terse admission of facts concerning the earlier experience since the child, then age four, was clearly a victim whose reputation would have been unaffected by such a disclosure. The admission of the prior occurrence would permit the defendant to disabuse jurors who might conclude that the child's familiarity with fellatio could not have existed absent the actuality of the ordeal described at trial by

the child. Evidence of the prior incident would not relate to the sexual *conduct* of the child, but rather her experience as a tender-aged victim of a sexual assault.

The error upon which we must reverse the fellatio conviction does not, in my opinion, similarly affect the cunnilingus count. The majority emphasizes that the trial court should allow inquiry into the prior incident only to the extent of *"specific instances of the complainant's sexual conduct."* (Emphasis added.) It is especially significant that there is *no evidence* in the record that the prior violation of the child included an act of cunnilingus. Moreover, there is an equal absence of evidence that the child was even questioned about cunnilingus in connection with the prior incident. We are thus faced with a reversal by this Court of the felony count of cunnilingus based upon a non-event, *i.e.*, the introduction of the then four-year-old victim to cunnilingus as a result of the prior incident.

The majority relies on State v. Howard, 426 A.2d 457 (N.H. 1981), as authority for reversal of defendant's conviction on both counts. Unfortunately, State v. Howard does not support the reversal of the cunnilingus conviction. The Supreme Court of New Hampshire, as quoted by the majority, states that "a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the prosecutrix has the *experience and ability* to contrive a statutory rape charge against him." (Emphasis added.) Aside from the fact that *State v. Howard* involved a twelve-year-old complainant with an allegedly extensive prior history of consensual sexual conduct as opposed to the six-year-old prosecutrix in the instant case whose only "history" was as a four-year-old victim of sexual assault, it must be emphasized that there is no showing that the child-victim in this case had "the experience and ability" to contrive a charge of cunnilingus against the defendant stemming from the prior incident.

Another consequence of the majority ruling is that it actually violates the spirit of the rape shield law by accommodating a general attack on the credibility of the child-victim. In effect, the majority holds that the child's prior experience as a four-year-old victim of sexual assault in the form of fellatio may be admitted as a basis for inferring that she contrived a charge of cunnilingus against Summitt. We are thus propelled into the concept that sexual history in general, as opposed to *specific instances* of sexual experience in particular, may be introduced to attack the credibility of a prosecutrix. It is clear that such a proposition substantially expands both the holding and the *ratio decidendi* of State v. Howard, *supra*. It also appears, given the tender age of the prosecutrix in the instant case, that the proposition created by this decision would apply in virtually all instances involving a

child-victim whose sexual "history" is limited to an experience of sexual assault occurring at age four or above. I am simply unable to reconcile the majority ruling "with the necessity of accommodating the competing interests of complaining witnesses and defendants" by construing and applying the rape shield law "so as to uphold the constitutional rights of defendants, while creating the least possible interference with the legislative purpose reflected in the statutes." I therefore conclude that the majority position is in conflict with the basic purpose and spirit of Nevada's rape shield statute.

There is an additional reason why I believe this Court should be particularly sensitive to the peculiar circumstances of the instant case in relation to the rape shield law. Specifically, Nevada's rape shield statute, NRS 50.090, applies to victims who have a prior history of sexual *conduct*. The word "conduct" imports active behavior, and does not comprehend mere experience forced on a tender-aged child by means of a felonious sexual assault. I would therefore conclude that the beneficial concerns and purposes of the rape shield legislation would have even stronger application to a child-victim of sexual assault who has no history of personal sexual conduct. It is one thing to permit the introduction of specific instances of actual sexual experiences forced upon a child as a victim in order to disabuse jurors of the inference that a child's knowledge of such experiences must have necessarily resulted from the alleged acts of the defendant. It is quite another proposition to permit the introduction of evidence of one type of sexual assault previously suffered by the child-victim as a basis for inferring an ability on the part of the child-victim to contrive a different sexual crime against the defendant. The former proposition achieves fairness to the defendant and respect for the youthful victim; the latter provides an advantage to the defendant which is unfair to the state and which diminishes or eliminates the intended statutory protection and respect for the prosecutrix.

My position in dissent is reinforced by the failure of defense counsel to preserve as an issue on appeal the refusal of the district court to admit evidence of the prior incident as it relates to the cunnilingus conviction. Such "failure" was both understandable and justifiable since there was no evidence upon which to create such an issue.[1] Furthermore, in defendant's motion for a new trial the instant issue was directed to the fellatio count. I therefore

---

[1]Defense counsel did, however, properly object to the trial court's refusal to allow evidence of the prior incident as it related to the fellatio count. In that regard, counsel unsuccessfully proffered the following instruction to the jury:

"It is improper for you to infer that . . . [the child-victim] would have

conclude that this Court should defer to the time-honored rule that an issue not raised in the trial court will not be entertained on appeal. Merica v. State, 87 Nev. 457, 488 P.2d 1161 (1971); Kelly v. State, 76 Nev. 65, 348 P.2d 966 (1960). Actually, in reversing the cunnilingus conviction, this Court not only disregards the rule precluding the consideration of issues raised initially on appeal—it extends itself to create, *sua sponte*, a non-constitutional issue upon which relief is granted without benefit of legal precedent or authority.

These types of cases are extremely difficult. I am keenly aware of the concern of my brethren in the majority for both the rights of the defendant and the ordeal of the young prosecutrix upon retrial. Moreover, I respect the sense of the majority that I am drawing too thin a line in my dissenting position. I must nevertheless conclude, for reasons noted above, that defendant's conviction on the cunnilingus count should be affirmed. Accordingly, I respectfully dissent.

---

known of the act of fellatio: that being the insertion of the penis into the mouth, only if the actions she testified to had in fact occurred."

Additionally, in arguing to the court below, defense counsel said:

"But the fact is that there are normal people in this community, normal people that get called as jurors that sit up there and in their growing up experiences at six years old, did not know of these type [sic] of sexual acts, and maybe cunnilingus was not mentioned in that prior act, but fellatio definitely was, and fellatio is an issue in this case."