STATE of Wisconsin, Plaintiff-Respondent,†

v.

Angela PULIZZANO, Defendant-Appellant.

Court of Appeals

*No. 88-0010-CR. Argued November 8, 1988.—Decided December 7, 1988.*

(Also reported in 434 N.W.2d 807.)

† Petition to review filed. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

On behalf of the defendant-appellant there were briefs and oral argument by *Matthew H. Huppertz* of *Carlson & Huppertz* of Waukesha.

On behalf of the plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general and *Sharon Ruhly,* assistant attorney general. There was oral argument by *Sharon Ruhly.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Angela Pulizzano appeals her conviction on four counts of first-degree sexual assault

contrary to sec. 940.225(1)(d), Stats. The victims included Pulizzano's two children and her two nephews. Pulizzano's appeal challenges her conviction on three grounds: (1) the denial of permission to cross-examine M.D. as to a prior sexual assault; (2) the exclusion of evidence of M.D.'s untruthfulness; and (3) the propriety of the prosecution's closing arguments.

M.D., Pulizanno's nephew, testified that on a Saturday afternoon, Pulizzano requested that the four children pull down their pants. M.D. testified that Pulizzano "sucked on my peeter or penis and touched it." He further testified that she did the same to the other two boys, and then "stuck something up D.P.'s butt and stuck her finger up D.P.'s vagina." None of the other three victims testified. Further facts will be stated as necessary.

Pulizzano contends that she was denied her sixth amendment right to confront the witnesses against her. She bases this on the trial court's refusal to allow her to question M.D. with respect to a prior sexual assault for which he was receiving therapy. Pulizzano sought this testimony "for the purpose of explaining to the jury how [M.D.] ha[d] such explicit knowledge of sexual matters."

The trial court found that this evidence was being offered solely to circumvent the rape shield law, sec. 972.11, Stats. Further, the trial court found that any relevance associated with M.D.'s terminology was outweighed by considerations of unfair prejudice, confusion of the issues, and misleading the jury. *See* sec. 904.03, Stats.

Generally, the admissibility of evidence is a question left to the discretion of the trial court. *State v. Winston*, 120 Wis. 2d 500, 505, 355 N.W.2d 553, 556 (Ct.

App. 1984). However, Pulizzano argues that the exclusion of this testimony was not only erroneous, but also violated her constitutional rights. Application of constitutional principles to the facts presents a question of constitutional fact which we review without deference to the trial court. *See State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827, 832 (1987).

Pulizzano relies on *State v. Padilla,* 110 Wis. 2d 414, 329 N.W.2d 263 (Ct. App. 1982), for the proposition that she should have been allowed to present an alternative source for M.D.'s detailed knowledge of sexual matters. In *Padilla,* the court refused to determine if the defendant should have been allowed to cross-examine the victim on the prior sexual assault because a proper offer of proof was lacking. *Id.* at 429–31, 329 N.W.2d at 271–72. It is on this point that the state chooses to respond in this case, arguing that Pulizzano's offer of proof is insufficient to provide a basis for review. The offer of proof consisted of a report and accompanying handwritten notes by Dr. B. William Freund.

Dr. Freund's report stated that M.D. had been having dreams in which a particular woman, C., and two other people suck his penis. It further stated that Dr. Freund "elicited" that M.D. had been the victim of sexual abuse by three older people in 1983 or 1984. In Dr. Freund's words, "the trauma consisted of fondling and perhaps sodomy of his penis but he does state that he was 'hurt.' Therefore, I think that he may have had anal penetration." The report also stated that M.D. inappropriately uses adult phrases and is abnormally interested in sexual material.

The state argues that this offer of proof was insufficient for two reasons. First, there was no *in camera* hearing, making it impossible to determine if

M.D. would testify consistently with Dr. Freund's report. Second, the state argues that there was an inadequate showing of similarity between the two experiences.

An offer of proof need not be stated with complete precision or in unnecessary detail, but it should state an evidentiary hypothesis, underpinned by a sufficient statement of facts, to warrant the conclusion or inference that the trier of fact is urged to adopt. *Padilla,* 110 Wis. 2d at 430, 329 N.W.2d at 271. An offer of proof can be by statement of counsel or in question and answer form. *Id.* at 429, 329 N.W.2d at 271; sec. 901.03(2), Stats.

Here, Pulizzano's offer of proof was made by counsel and incorporated a written report. We see nothing patently inadequate about this method.

Regarding the concern that M.D.'s testimony might be inconsistent with the report, such is often the case with cross-examination. Dr. Freund's report provides Pulizzano with a good-faith factual basis for cross-examination. Assuming the testimony is otherwise admissible, Pulizzano would be entitled to cross-examine M.D., and if the answers were inconsistent with Dr. Freund's report, she could use Dr. Freund to contradict M.D. *See* sec. 906.13, Stats.

The state questions the similarity of the two events, relying on *Padilla.* There, the court noted that if the prior sexual experience were identical to the present assault, it could be inferred that the explicit knowledge was not necessarily gleaned from the present assault. *Padilla,* 110 Wis. 2d at 428, 329 N.W.2d at 271. We do not read this as requiring identical experiences. Rather, *Padilla* suggests that there is a continuum from identi-

195

cal experiences to completely dissimilar experiences. The former is relevant; the latter is not.

The acts of which Pulizzano was accused included fellatio, anal penetration with an object, and digital penetration of the vagina. The acts referred to in Dr. Freund's report are fondling and sodomy of the penis (sodomy includes fellatio, *see Webster's Third New International Dictionary* 2165 (1976)) and possible anal penetration with an object. At least one of the abusers, C., was an adult woman. We conclude that sufficient similarity between the acts was shown to allow an inference that M.D.'s explicit sexual information was not necessarily gleaned from the alleged assault by Pulizzano.[1] *See Padilla,* 110 Wis. 2d at 428–29, 329 N.W.2d at 271.

Having concluded that the offer of proof is sufficient for us to review the issue, we must examine whether the trial court correctly excluded this proffered testimony as being prohibited by sec. 972.11, Stats. Section 972.11 provides in part:

> (2)(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.
>
> (b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into

---

[1]Even if M.D.'s testimony tends to show that the acts are dissimilar from those alleged, the evidence would be relevant because the doctor's report would still be probative evidence that M.D. had prior knowledge of the particular acts.

evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c) Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2 or 3.

Pulizzano correctly points out that not all sexual expressions are subject to the rape shield statute. *See State v. Vonesh,* 135 Wis. 2d 477, 488–90, 401 N.W.2d 170, 176 (Ct. App. 1986). On this basis, she argues that we should hold that the proffered evidence falls under *Vonesh.* While perhaps M.D.'s dreams and verbalizations are not covered by the statute, we note that Pulizzano's offer of proof only referred to "questions concerning the prior sexual assault." We will therefore confine our opinion accordingly.

■
The first question to be answered is whether a prior sexual assault falls within the definition of sexual conduct in sec. 972.11(2)(a), Stats. This presents a question of statutory construction which we review without deference to the trial court. *State v. Mason,* 132 Wis. 2d 427, 431, 393 N.W.2d 102, 104 (Ct. App. 1986).

Two considerations lead us to conclude that evidence of a prior sexual assault is protected by sec. 972.11(2), Stats. First, subsec. (2)(a) is drafted broadly, referring to "conduct," "behavior," "activities," and "prior experience" of the complaining witness. If subsec. (2)(a) were to be limited to consensual activities, the legislature could have easily expressed this limitation.

Second, subsec. (2)(b)3 of sec. 972.11, Stats., excludes from operation of the statute "prior untruthful allegations." Prior *truthful* allegations are not excluded, and we conclude that sec. 972.11(2) affords protection therefor, provided that the prior sexual assault directly involved the complaining witness. *See* sec. 972.11(2)(a).

Pulizzano argues that the application of sec. 972.11(2), Stats., to the facts of this case violates her sixth amendment right to confront her accuser. This issue was recently addressed in *State v. Herndon,* 145 Wis. 2d 91, 426 N.W.2d 347 (Ct. App. 1988).[2]

The court of appeals in *Herndon* declared sec. 972.11(2)(c), Stats., unconstitutional because it operated as an absolute prohibition of certain evidence. *Herndon,* 145 Wis. 2d at 129, 426 N.W.2d at 363. The trial court must be allowed to balance the competing interests as required by *Davis v. Alaska,* 415 U.S. 308 (1974). *Herndon,* 145 Wis. 2d at 128–29, 426 N.W.2d at 362–63.

To facilitate this balancing test, *Herndon* adopted a six-pronged test which applies to sexual assault cases where consent is at issue. *Id.* at 122–23, 426 N.W.2d at

[2]The trial court did not have the benefit of our opinion in *State v. Herndon,* 145 Wis. 2d 91, 426 N.W.2d 347 (Ct. App. 1988), at the time of trial.

360; *see also id.* at 129, 426 N.W.2d at 363.[3] Consent is not at issue in the case before us. Instead, we are faced with Pulizzano's desire to rebut the inference that M.D. gained his sexual knowledge as a result of her assault on him.

The Supreme Court of Nevada has applied the *Davis* balancing test in such a case. *Summitt v. State,* 697 P.2d 1374 (Nev. 1985). The Nevada court characterized the evidence as being used "for the sole and limited purpose of challenging the witness's credibility by dispelling an inference which the jury may well draw otherwise from the circumstances, that a six year old child would be unable to describe the occurrences in her testimony unless they had in fact taken place." *Id.* at 1376. The court concluded that the rape shield statute should be construed to uphold the defendant's rights while creating the least possible interference with the legislative purpose of protecting the victim. *Id.*

We conclude that in order to prevent a collision in this case between the rape shield law and Pulizzano's sixth amendment rights, the balancing test of *Davis* must be applied. Because of the factual differences between *Herndon* and the case before us in terms of what is sought to be proven, the six-pronged test of

---

[3]This six-pronged test is based on the use of other crimes, wrongs, or acts evidence. *Herndon,* 145 Wis. 2d at 122, 426 N.W.2d at 360. Prior to admission of such evidence, the following conditions must be met: (1) there is a clear showing that the complainant committed the prior acts; (2) the circumstances of the prior acts closely resemble those of the present case; (3) the prior acts are clearly relevant to a material issue, such as identity, intent or bias; (4) the evidence is necessary to the defendant's case; (5) the probative value of the evidence outweighs its prejudicial effect; and (6) the prior acts involve a related pattern of behavior and not just a single past act. *Id.* at 122–23, 426 N.W.2d at 360.

*Herndon* is inappropriate. We turn instead to the general test as expressed by the United States Supreme Court in *Davis.*

*Davis* involved a defendant who was denied the opportunity to cross-examine a juvenile witness regarding the witness' confidential juvenile record. *Davis,* 415 U.S. at 310–11. The defendant was attempting to show that the juvenile, who was on probation, might have made a hasty and incorrect identification in order to shift suspicion from himself or to gain favor with the police. *Id.* at 311. The *Davis* court balanced the state's interest in upholding its evidentiary rules against the defendant's constitutional right to confront witnesses. *Id.* at 319–20.[4]

Several factors which the Supreme Court considered to be important in *Davis* are also present in the case before us. The testimony sought by the defendant was not a general attack on the witness' credibility, but a particular attack directed toward possible biases, prejudices or motives. *Id.* at 316. In addition, the truthfulness of the witness was a crucial link in the prosecution's case. *Id.* at 317.

Both *Davis* and the Wisconsin case of *Herndon* dealt with the witness' *motive* to fabricate and the defendant's desire to expose the jury to facts which would allow inferences to be drawn regarding the witness' credibility. *See id.* at 318; *Herndon,* 145 Wis. 2d at 126, 426 N.W.2d at 362. Our case differs slightly in that the concern is the *ability* of the witness to fabricate. Further, Pulizzano desires to present facts which might rebut the jury's inference that this particular witness, due to his tender years, could not "make

---

[4]This test was set forth in *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973).

up" such a story unless the incident being prosecuted actually happened. *Cf. Summitt,* 697 P.2d at 1376–77.

The state certainly has an interest in enforcing the rape shield law to protect complainants. *See Herndon,* 145 Wis. 2d at 127–28, 426 N.W.2d at 362. However, we conclude that, as in *Davis,* the state's interest in protecting the witness "cannot require yielding of so vital a constitutional right as the effective cross-examination ... of an adverse witness." *Davis,* 415 U.S. at 320.

This is not to say that all evidence which Pulizzano might seek to elicit about the prior assault will be admissible. The trial court must always be wary of the balance between the testimony's probative value and its prejudicial effect.[5] Once the jury is presented with some evidence, each additional or cumulative bit of evidence becomes less probative and thus more likely to be excluded. Only the testimony necessary to the defendant's theory should be admitted to prevent the "wholesale allowance of totally irrelevant prior sexual conduct." *Herndon,* 145 Wis. 2d at 123, 426 N.W.2d at 360.

In conclusion, application of the *Davis* balancing test requires that Pulizzano be allowed limited inquiry into the prior sexual assault for the purpose of negating the inference that M.D.'s sexual knowledge was gained

---

[5]The trial court found that the risk of prejudice and confusing the issues was too great to allow in *any* of this testimony. Such a ruling does not comport with Pulizzano's sixth amendment rights. Further, we conclude that the trial court unnecessarily deprecated the probative value of the testimony. The trial court did not consider the stated purpose for this testimony, but found it was being offered "strictly to circumvent 972.11 and for no other purpose."

from the alleged assault by Pulizzano. The trial court should be cautious, however, and restrict the testimony where necessary to avoid embarrassment or humiliation of M.D., while at the same time protecting Pulizzano's sixth amendment right to put her defense theory before the jury. *See Summitt*, 697 P.2d at 1377.[6]

Pulizzano argues that the trial court incorrectly prohibited testimony of prior untruthful allegations of sexual assault made by M.D. Counsel for Pulizzano noted the specific incident:

> [M.D.] had indicated to one of his aunts named Andrea that two children ... had informed him that on the 7th of September ... Angela had made sexual overtures [sic] to them.

The trial court ruled that the testimony would not be allowed since it was "impeachment on a collateral issue."

The court of appeals will not find an abuse of the trial court's discretion on questions concerning the relevancy of particular evidence if there is a reasonable basis for the trial court's determination. *State v. Denny*, 120 Wis. 2d 614, 626, 357 N.W.2d 12, 18 (Ct. App. 1984). It is important to note that the offer of proof is not that M.D. said that the two children were sexually assaulted, but that the two children *told* M.D. that they were sexually assaulted. This tangled web of multiple hearsay would cause almost a mini-trial on this extrinsic issue. As a result, the jury would be considering matters which were not pertinent to the issues at hand. The

[6]The offer of proof was sufficient to allow us to review the issue. However, on remand, the trial court may conduct a pretrial hearing in some detail to determine the extent of information which will be presented to the jury.

probative value of this testimony was outweighed by the confusion that would ensue. Therefore, the trial court did not abuse its discretion in excluding it.

Also, Pulizzano contends that the impropriety of the prosecution's closing remark was so great that the trial court should have declared a mistrial. We do not need to address this issue due to our determination of the other issues in this case and the fact that the closing argument on retrial may be substantively different.

*By the Court.*—Judgment and order reversed and cause remanded.