# IN THE SUPREME COURT OF THE STATE OF NEVADA

ASHENAFI GEBRE ABERHA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73121

FILED

OCT 3 1 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary and sexual assault. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Following a six-day trial, a jury found appellant Ashenafi Aberha guilty of burglary and sexual assault and the district court sentenced him to 120 months for burglary, and 10 years to life with lifetime supervision for sexual assault. The victim, Sophie, is British and was on vacation in Las Vegas when Aberha, a hotel employee, allegedly sexually assaulted her in her hotel room. Sophie, her sister Faye, and a friend checked into the Vdara Hotel & Spa and immediately went to the pool where they had a few cocktails. They later headed to dinner and drank a few more cocktails on the way there. On their way back to the hotel, they stopped by the reception desk and asked that someone come make up the sofa bed in their room. Sophie felt tired so she elected to sleep rather than join her friends at a party. She changed into a nightgown and immediately went to sleep on the normal bed.

Jonathan Rodarte was the Vdara employee called to make up the sofa bed. Rodarte knocked and when he received no response, he entered the room. However, after turning on the lights, Rodarte realized someone was sleeping and left so he would not wake her. Approximately

18-42759

five minutes later, Rodarte changed his mind and returned to the room to make up the sofa bed. Sophie did not react when Rodarte entered the room, or when he tried to verbally alert her of his presence. Rodarte then tapped Sophie on her shoulder, to which she half-awoke, and Sophie gave Rodarte permission to make up the sofa bed. Sophie then went back to sleep.

While making up the sofa bed, Rodarte heard the room's doorbell. He opened the door and found Aberha, whom Rodarte did not personally know but recognized as hotel staff. Aberha asked Rodarte if Sophie was still sleeping, and Rodarte confirmed that she was. Aberha then walked toward Sophie, without giving any indication that he knew her or that she was expecting him, and climbed onto the bed. Rodarte then observed as Aberha had sex with the still sleeping Sophie. Rodarte testified that as soon as Sophie woke up and realized what was happening, she began "freaking out." Aberha then told Rodarte "[d]on't tell anybody" and left the room. Rodarte asked Sophie if she was okay, to which she screamed at him to get out. Rodarte confirmed at trial that the man on top of Sophie was Aberha, and that he was the other man in the room.

Sophie testified to similar facts during the first trial. She further testified that she got dressed, noticed semen in her genital area, and immediately went to hotel security to obtain police help. An ambulance was called, which took Sophie to the hospital for a sexual assault exam. The DNA profile from the sperm was consistent with Aberha.

On June 24, 2013, the State filed a complaint charging Aberha with one count burglary and one count sexual assault. A six-day jury trial was held in May 2016, wherein Sophie, Faye, and Rodarte testified, among others. Following deliberation, the jury was unable to reach a unanimous verdict and the district court declared a mistrial. Prior to the second trial, the State filed a motion to continue trial based on the unavailability of

Sophie and Faye. The district court conducted a hearing on the motion and found that the sisters were unavailable. The district court then informed the parties that if it granted the continuance, it could not hold the second trial for three or four months. Aberha indicated his priority was to have the trial completed as quickly as possible and opted to move forward without the presence of Sophie or Faye, and with the use of transcripts from the first trial.

In February 2017, a second six-day trial was conducted and the jury returned a guilty verdict as to both counts. The district court sentenced Aberha to 120 months with a minimum parole eligibility of 48 months for burglary, and life with eligibility of parole after 10 years for sexual assault, to run concurrent. Aberha now appeals.

## DISCUSSION

*The district court did not violate Aberha's Confrontation Clause rights by finding that Sophie and her sister Faye were unavailable and by admitting the prior transcripts*

Aberha contends that the State failed to establish that the Sophie and her sister Faye were unavailable to testify at the second trial, and that admitting the transcripts from the first trial violated his Sixth Amendment Confrontation Clause rights. We disagree.

We review a district court's decision to admit evidence for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). However, whether a defendant's Confrontation Clause rights were violated is a question of law that is reviewed de novo. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009). This court reviews whether "the prosecution exercised constitutionally reasonable diligence to procure a witness's attendance" as "a mixed question of law and fact." *Hernandez v. State*, 124 Nev. 639, 647, 188 P.3d 1126, 1132 (2008), *abrogated on other grounds by State v. Eighth Judicial Dist. Court*, 134 Nev., Adv. Op. 13, 412

SUPREME COURT
OF
NEVADA

(O) 1947A

P.3d 18, 22 (2018). As such, this court "will give deference to the district court's findings of fact but will independently review whether those facts satisfy the legal standard of reasonable diligence." *Id.*

*Sophie and her sister Faye were unavailable for the second trial*

NRS 51.055(1)(d) provides that a witness is "unavailable" if the witness is

> [a]bsent from the hearing and beyond the jurisdiction of the court to compel appearance and the proponent of the declarant's statement has exercised reasonable diligence but has been unable to procure the declarant's attendance or to take the declarant's deposition.

This court has interpreted the State's burden to "exercise[ ] reasonable diligence to mean that the State must make reasonable efforts to procure a witness's attendance at trial before that witness may be declared unavailable." *Hernandez*, 124 Nev. at 645, 188 P.3d at 1130-31 (alteration in original). In assessing the reasonableness of the prosecution's actions in procuring a witness, "[t]he law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists . . . 'good faith' demands nothing of the prosecution." *Id.* at 650-51, 188 P.3d at 1134-35 (quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). "What constitutes reasonable efforts to procure a witness's attendance must be determined upon considering the totality of the circumstances." *Id.* at 650, 188 P.3d at 1134.

When the State learned that Sophie and Faye were unable to attend the second trial, it filed a motion to continue trial, or in the alternative, to admit transcripts from the first trial. The district court conducted a hearing on the matter, and the State explained the steps it took to procure Sophie and Faye's attendance. First, immediately after the trial was scheduled, the State emailed Sophie to notify her of the date. The State

noted that it always communicated with Sophie via email because she resided in England and the state phone lines do not allow for international phone calls. When the State received no response, it emailed Sophie again a few weeks later asking, "did you get my last email telling you the date of the new trial?"[1] Sophie responded the next day with, "Yes, I did receive your email. I don't want any further delays in this because of how the work system works in England." The State also represented to the district court that Sophie communicated the trial date to Faye.

Shortly before trial, the State again emailed Sophie to inform her that trial was set to begin on February 13, 2017, and that the defense was ready to move forward. Sophie then responded that she was starting a new job in England the week of trial and her sister had other travel plans, and therefore both were unavailable. The State then issued a subpoena to Sophie and filed a motion to continue.

We conclude that the State's actions, coupled with the fact that Sophie and Faye are British and therefore outside the subpoena power of the district court, equate to reasonable diligence. *See e.g., Mancusi v. Stubbs*, 408 U.S. 204, 212 (1972) (holding good faith effort was satisfied where witness moved to Sweden and could not be compelled to return to the United States); *Quillen v. State*, 112 Nev. 1369, 1376, 929 P.2d 893, 897 (1996) (finding the State's efforts reasonable when it made an effort to contact the witnesses, and it was "revealed that the witnesses quit their jobs, moved out of their home some five months prior to trial, [ ] left no

---

[1]The quoted language in this section is from the hearing transcript, not the actual email exchange between Sophie and the State. While the State offered to submit the emails to the district court, it does not appear that this occurred, or that the district court, or the defense, requested said emails.

forwarding address . . . [and potentially] returned to Mexico"). Under the totality of the circumstances, the district court properly found Sophie and Faye unavailable.

*Aberha's Confrontation Clause rights were not violated by the admission of the first trial transcripts*

Aberha argues that the district court's decision to admit the transcripts from the first trial violated his right to confront witnesses against him. We disagree.

The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "In accordance with that right, prior testimony from a witness unavailable at trial is admissible only if the defendant had 'a prior opportunity for cross-examination.'" *State v. Eighth Judicial Dist. Court*, 134 Nev., Adv. Op. 13, 412 P.3d 18, 21 (2018) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). "The adequacy of the opportunity to confront will be decided on a case-by-case basis, turning upon the discovery available to the defendant at the time and the manner in which the [ ] judge allows the cross-examination to proceed." *Chavez v. State*, 125 Nev. 328, 337, 213 P.3d 476, 482 (2009).

Aberha does not argue that the district court denied him adequate discovery during the first trial, or that he lacked the opportunity to cross-examination Sophie or Faye. In fact, Sophie was thoroughly cross-examined during the first trial. Moreover, Faye testified during the first trial, and we assume that Aberha had the opportunity to cross-examine her, as he does not assert that he was denied this opportunity on appeal.[2]

---

[2]The trial transcript provided to this court abruptly ends in the middle of the State's direct examination and thus, we cannot be certain

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Accordingly, we conclude that Aberha's cross-examination of Sophie, his opportunity to cross-examine Faye, and his ability to conduct discovery during the first trial adequately satisfied the Confrontation Clause requirements.

*The district court did not abuse its discretion by precluding admission of the hotel bills as evidence*

Aberha argues that the district court erred by precluding admission of an Aria Hotel & Casino hotel bill, where Sophie and Faye stayed following Sophie's sexual assault examination, and the Golden Nugget Hotel & Casino hotel bill, where Sophie and Faye stayed while attending the first trial three years after the assault. We address each bill in turn.

### *The Aria hotel bill was properly excluded*

Aberha argues the district court should have admitted the Aria hotel bill containing an itemization for a "romance kit" because it supports his theory of consent. The district court precluded admission of the Aria hotel bill as irrelevant to the issue of consent under Nevada's rape shield laws. Nevada's primary rape shield statute, NRS 50.090, provides that "[i]n any prosecution for sexual assault . . . the accused may not present evidence of any previous sexual conduct of the victim of the crime to challenge the victim's credibility as a witness . . . ." However, NRS 48.069 creates a narrow exception to this statute and outlines the procedure a defendant must utilize if he or she wishes to present evidence of the victim's prior sexual conduct to prove consent. NRS 48.069. In order to present such evidence, the statute provides that: (1) the defendant must submit a written offer of proof and a sworn statement with the facts he expects to prove and

---

whether Aberha was granted to opportunity to cross-examine Faye, or whether he utilized that opportunity.

their relevance; (2) if the district court finds the offer of proof sufficient, it must hold a hearing outside the presence of the jury and allow questions of the victim; and (3) if the court concludes the offered evidence is relevant to consent and admissible under NRS 48.035, then the evidence may be introduced. NRS 48.069.

Aberha submitted an offer of proof for the Aria hotel bill approximately one month before trial. Because the victim, Sophie, lived in England, the district court noted that it would have to hold the hearing on this motion on the first day of trial. At the hearing, the district court noted, "the purchase of the kit isn't sexual conduct, per se." We conclude the district court's initial analysis was correct in that the purchase of a romance kit is not "sexual conduct" under NRS 50.090. However, as further noted by the district court, and likely defense counsel's reasoning for providing an offer of proof and arguing for admission of the bill under rape shield statutes,

> the point of bringing [the bill] in and the potential relevance of it in this case, is that the kit shows she either had sex using condoms . . . so the whole point is to imply that she's having sex with someone two days after or wants to have sex with someone two days after. And that that shows she is lying about having been raped two days earlier and/or consented to have sex with the defendant because she was interested in having consensual sex with someone two days later.

Thus, despite finding that the Aria hotel bill was not evidence of "sexual conduct," the district court recognized that Aberha's purpose for seeking admission of the bill was to challenge Sophie's credibility as a witness in a manner prohibited by NRS 50.090. The district court further found that the Aria hotel bill was not relevant to the issue of consent and its admission was not permitted under NRS 50.090 and NRS 48.069. The district court

8

therefore precluded admission of the bill. Using the district court's analysis, we conclude the district court was correct in finding that the purchase of a "romance kit" the day after the sexual assault occurred is irrelevant to show that Sophie somehow consented to sexual intercourse with Aberha a day earlier.

Moreover, even if the hotel bill does not constitute evidence of "sexual conduct" under NRS 50.090, we further conclude the hotel bill is inadmissible under NRS 48.035. *See Wyatt v. State,* 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) ("If a judgment or order of a trial court reaches the right result, although it is based on an incorrect ground, the judgment or order will be affirmed on appeal."). Under NRS 48.035, a district court may exclude even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." Because "NRS 48.035 strongly favors admissibility . . . [t]o merit exclusion, the evidence must unfairly prejudice an opponent, typically by appealing to the emotional and sympathetic tendencies of a jury, rather than the jury's intellectual ability to evaluate evidence." *Krause Inc. v. Little,* 117 Nev. 929, 935, 34 P.3d 566, 570 (2001) (internal citations and quotations omitted).

Here, the bill's probative value is substantially outweighed by the danger of unfair prejudice and confusing or misleading the jury, and therefore the bill should not be admitted under NRS 48.035 for three reasons. First, both Sophie and Faye stayed in the Aria hotel room. Thus, either woman could have purchased the kit and admission of the bill had the potential to confuse and/or mislead the jury as to who purchased the kit. Second, the romance kit was purchased the day after the sexual assault, not immediately before the incident occurred. Thus, the purchase provides little probative value to show that Sophie allegedly consented to sexual

intercourse the previous day. Third, to the extent the purchase of the romance kit evidences Sophie's cavalier attitude toward sex, or demonstrates promiscuity, such evidence is unduly prejudicial and contravenes the intended purpose of rape shield laws. *Summitt v. State*, 101 Nev. 159, 161, 697 P.2d 1374, 1375 (1985) (noting that a "purpose of such statutes is to protect rape victims from degrading and embarrassing disclosure of intimate details about their private lives" (internal quotation omitted)). Thus, the district court properly excluded the Aria hotel bill.

*The Golden Nugget hotel bill was properly excluded*

Aberha next claims that the district court erred by precluding the admission of the Golden Nugget hotel bill, where Sophie and Faye stayed when they attended the first trial three years after the assault. The hotel bill included charges for room upgrades and alcohol, which Aberha argues are relevant to determining whether Sophie's earlier actions at the Vdara hotel were consistent with consent rather than sexual assault. The State objected on relevance grounds and the district court precluded admission of the bill.

As previously noted, a district court may exclude even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035. Similar to the Aria bill, the Golden Nugget bill had the potential to confuse the jury and unfairly prejudice Sophie because Sophie and Faye again shared a room at the Golden Nugget and either woman could have made the purchases. *See* NRS 48.035. Moreover, this bill is even less relevant than the bill from the Aria, because it concerns purchases made three years after the sexual assault. As such, Aberha's argument that the Golden Nugget bill could have established that Sophie consented to have sex with him three years earlier lacks merit. Furthermore, any other

SUPREME COURT
OF
NEVADA

(O) 1947A

10

probative purpose the bill might serve, such as evidence of Sophie's attitude toward sex or to argue she failed to act like a rape victim, is substantially outweighed by the risk of unfair prejudice. NRS 48.035. We therefore conclude the district court properly excluded the Golden Nugget hotel bill.[3] Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

---

[3]Aberha also contends there was insufficient evidence to sustain his convictions. On appeal, this court determines whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Grey v. State*, 124 Nev. 110, 121, 178 P.3d 154, 162 (2008) (emphasis in original) (internal quotation omitted). The testimony of a victim, alone, is sufficient to meet the beyond a reasonable doubt standard. *State v. Gomes*, 112 Nev. 1473, 1481, 930 P.2d 701, 706 (1996). Thus, while we conclude Sophie's testimony alone was sufficient to uphold Aberha's convictions, we note that her testimony was corroborated by Rodarte's testimony and DNA evidence. Accordingly, there was sufficient evidence to uphold the convictions.

cc: Hon. Elissa F. Cadish, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A