**137 Nev., Advance Opinion 38**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| TYRONE DAVID JAMES, SR., Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 80902 |
| TYRONE DAVID JAMES, SR., Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 80907 **FILED** JUL 29 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Consolidated appeals from a district court order denying a postconviction petition requesting a genetic marker analysis (Docket No. 80902) and a postconviction petition for a writ of habeas corpus (Docket No. 80907). Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded in Docket No. 80902; vacated and remanded in Docket No. 80907.*

Rene L. Valladares, Federal Public Defender, and C.B. Kirschner, Assistant Federal Public Defender, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Taleen Pandukht, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE SUPREME COURT, CADISH, PICKERING, and HERNDON, JJ.

*OPINION*

By the Court, HERNDON, J.:

A jury convicted appellant Tyrone David James, Sr. (James) of sexual assault of a minor, open or gross lewdness, and battery with intent to commit a crime. He was sentenced to 25 years to life. A rape kit collected from the alleged victim, and not tested prior to trial, was subjected to postconviction testing and revealed a DNA match to a man other than James. After being notified about the discovery of the DNA evidence, James filed a postconviction petition requesting a genetic marker analysis and a postconviction petition for a writ of habeas corpus. The district court denied both petitions. James appeals both decisions. He argues that the district court erred by denying his request for genetic marker analysis when there was a presumptive CODIS match to a man other than himself. He further argues that the district court erred by dismissing his petition for habeas corpus because the CODIS match constituted new evidence of actual innocence that overcame procedural bars.

We conclude that the district court erred in denying James's postconviction petition requesting a genetic marker analysis and thus reverse the decision in Docket No. 80902. We further conclude that because the district court erred in denying the petition requesting genetic marker analysis, the district court's decision in Docket No. 80907 regarding the habeas petition must be vacated. We remand both matters for further proceedings.

## FACTS

On May 14, 2010, T.H., then 15 years old, reported to police that she had been sexually assaulted by James, an adult man who was dating T.H.'s mother at the time. T.H. underwent a sexual assault exam and told the examiner that her last consensual sexual encounter was one year prior. James denied engaging in any sexual activity with T.H. At trial, he admitted to briefly stopping by T.H.'s house on the morning of May 14 and giving T.H. a ride to school, but he denied assaulting T.H. James argued that T.H. "openly disliked" him prior to her allegation of assault and that there was no physical evidence against him, including "medical findings or DNA," to corroborate T.H.'s allegations. James was ultimately convicted of multiple crimes related to T.H.'s sexual assault and sentenced in 2011 to 25 years to life.[1]

James's direct appeal and postconviction proceedings in state court were unsuccessful. In early 2019, James learned that new DNA evidence had been discovered in his case that was potentially exculpatory. Specifically, James learned that postconviction testing had been conducted on a rape kit collected from T.H. and the analysis of the perineum swab from T.H.'s rape kit revealed a DNA profile that when entered into the CODIS DNA database was a presumptive match to another man. James filed a petition requesting a genetic marker analysis in order to get confirmation of the presumptive results. He also filed a second postconviction petition for a writ of habeas corpus.

---

[1]James was convicted by jury of two counts of sexual assault of a minor under the age of 16, two counts of open or gross lewdness, and battery with intent to commit a crime. The open or gross lewdness charges were dismissed at sentencing due to being pleaded in the alternative to the sexual assault of a minor under the age of 16 charges.




At a hearing where the district court considered James's petition requesting a genetic marker analysis, the court stated the following:

> [T]here is no indication that this was anything other than an individual known to the victim. This was not the type of case where the allegations may prove that it was some—some unknown individual. And from everything I have read on the rape shield, et cetera, provided to me, and from the Supreme Court on this case, that the fact that the victim may have had other sexual conduct would not be admissible.
>
> And, therefore, although I realize that the standard is very slight, it's the possibility, if there is no new evidence, meaning that this can't come in to show someone else, the—well, the statute, along with what I just quoted, preclude the testing. And therefore I'm denying the petition on that basis.

The district court failed to enter a written order directly addressing its denial of the petition requesting a genetic marker analysis. Instead, the district court issued an order denying the second postconviction petition for a writ of habeas corpus and implicitly denying the petition requesting a genetic marker analysis. James appeals.

## DISCUSSION

James contends that because there is a reasonable possibility that he would not have been convicted if exculpatory results had been obtained from the DNA evidence identified in his petition, the district court erred in denying his genetic marker petition. He further argues the district court erred in concluding the evidence obtained from genetic marker analysis would have been inadmissible under the rape shield statute. We agree.

"[A] district court's factual findings will be given deference by this court on appeal, so long as they are supported by substantial evidence and are not clearly wrong." *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005). Questions of law are reviewed de novo. *Bailey v. State*, 120 Nev. 406, 407, 91 P.3d 596, 597 (2004).

NRS 176.0918(1) provides that "[a] person convicted of a felony . . . may file a postconviction petition requesting a genetic marker analysis of evidence within the possession or custody of the State which may contain genetic marker information relating to the investigation or prosecution that resulted in the judgment of conviction." NRS 176.09183(1) provides that the district court shall order genetic marker analysis if the court finds the following:

(a) The evidence to be analyzed exists;

(b) . . . the evidence was not previously subjected to a genetic marker analysis, including, without limitation, because such an analysis was not available at the time of trial; and

(c) One or more of the following situations applies:

(1) A reasonable possibility exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through a genetic marker analysis of the evidence identified in the petition;

(2) The petitioner alleges and supports with facts that he or she asked his or her attorney to request to have a genetic marker analysis conducted, but the attorney refused or neglected to do so;[2] or

---

[2]James claimed below that he did request that his counsel test the swabs, but does not assert on appeal that this request is the basis for his

(3) The court previously ordered a genetic marker analysis to be conducted, but an analysis was never conducted.

"'Exculpatory evidence' is defined as '[e]vidence tending to establish a criminal defendant's innocence.'" *State v. Huebler*, 128 Nev. 192, 200 n.5, 275 P.3d 91, 96 n.5 (2012) (alteration in original) (quoting *Exculpatory Evidence, Black's Law Dictionary* 637 (9th ed. 2009)).

The district court apparently concluded that there was no reasonable possibility James would not have been prosecuted or convicted because any evidence from a genetic marker analysis that indicated another male's DNA was present in the rape kit would be inadmissible under Nevada's rape shield statute. NRS 50.090 provides that in a prosecution for sexual assault, "the accused may not present *evidence of any previous sexual conduct*" of the victim in order to challenge the victim's credibility as a witness "unless the prosecutor has presented evidence or the victim has testified concerning such conduct, or the absence of such conduct." (Emphasis added.) In cases where NRS 50.090 is arguably applicable, the defendant must be given an opportunity upon motion to demonstrate that due process requires the admission of evidence concerning the victim's past sexual conduct because such evidence's probative value substantially outweighs its prejudicial effect. *Summitt v. State*, 101 Nev. 159, 163, 697 P.2d 1374, 1377 (1985).

First, we note that it is difficult to evaluate the district court's decision on the petition requesting a genetic marker analysis because it

---

petition requesting a genetic marker analysis. He argues exclusively on appeal that NRS 176.09183(1)(c)(1) is the basis for his genetic marker analysis request, so we only address this argument.

failed to state the basis for its reasoning in the order that was entered.[3] That said, we nonetheless conclude that the district court mistakenly assumed that the CODIS match to another man's DNA was evidence of "previous sexual conduct" such that the evidence would be inadmissible at a trial. There is no evidence to support the conclusion that the match is evidence of sexual conduct preceding the assault. The district court assumed that since T.H. testified that she knew James was her assailant, any other DNA evidence collected through the rape kit would be indicative of T.H. having engaged in a prior consensual sexual encounter with another person and was therefore inadmissible. However, the other man's DNA was found in a rape kit collected the day of the alleged assault, and T.H. reported that she had not engaged in any sexual conduct within a year prior to the assault. This, therefore, leaves open the possibility that the evidence indicated the identity of the person that engaged in sexual acts with T.H. on the day in question and was not evidence of sexual conduct prior to the assault. Thus, the district court's assumption was not supported by evidence in the record, and it erred in concluding that the CODIS match would have been precluded by NRS 50.090.

Importantly, even if the CODIS match evidence could have been considered as falling within the scope of NRS 50.090's definition of "previous sexual conduct," such that it might arguably be inadmissible at trial, James would have been entitled to an opportunity, upon his request, to raise the

---

[3]Indeed, although the order was intended to address both the petition requesting a genetic marker analysis and the petition for habeas corpus relief, it only directly addressed the petition for habeas corpus. The only information expressly regarding the district court's decision on the petition requesting a genetic marker analysis is found in the transcript of a hearing discussing the matter and subsequent minute order.

issue of whether his constitutional rights would be violated by not admitting the evidence and require the court to consider whether the probative value of the evidence substantially outweighs its prejudicial effect. *Summitt*, 101 Nev. at 163, 697 P.2d at 1377. Thus, the district court's conclusion was a premature determination that the evidence would have been excluded at trial. This, coupled with the district court's refusal to even permit the requested genetic marker analysis, denied James the opportunity to litigate the admissibility of potentially critical evidence.

We must next consider if the district court nonetheless correctly denied the petition. A petitioner need only show "[a] reasonable possibility . . . that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through a genetic marker analysis of the evidence identified in the petition." NRS 176.09183(1)(c)(1). The "reasonable possibility" standard is "more favorable to the accused than the" "reasonable probability" standard. *Wade v. State*, 115 Nev. 290, 296 n.4, 986 P.2d 438, 441 n.4 (1999) (internal quotation marks omitted). While not binding precedent, this court has interpreted the meaning of "reasonable possibility" in prior unpublished orders, and typically, when the results of the analysis would be irrelevant to the State's theory of the crime or the defendant's defense, a "reasonable possibility" does not exist. *See, e.g., Langford v. State*, Docket No. 77262 (Order of Affirmance, Apr. 12, 2019) (holding that when the appellant sought testing solely for the purpose of identifying the victim's DNA on bedding, when the victim testified that the appellant had laid a towel on top of the bedding before committing the assault, and the victim's and the appellant's DNA was found on the towel, a "reasonable possibility" that the appellant would not have been prosecuted or convicted did not exist). James maintained throughout his

case that he is innocent of this crime and that he did not engage in any sexual activity, consensual or nonconsensual, with T.H. Accordingly, the existence of another man's DNA on T.H.'s body, as discovered in a rape kit collected the day of the alleged assault, paired with T.H.'s report that she had engaged in no sexual activity for a year prior to the assault, would have strongly supported James's defense. This case is also not analogous to that in the unpublished order mentioned above, *Langford*, where the testing requested would not have refuted the State's narrative of events. We conclude that the district court erred in denying James's petition requesting a genetic marker analysis because there was a reasonable possibility that James would not have been prosecuted or convicted had the genetic marker analysis been conducted prior to trial. Accordingly, we reverse the decision in Docket No. 80902 and remand for further proceedings on the petition requesting a genetic marker analysis.

Due to the district court's error in denying James's petition requesting a genetic marker analysis, this court cannot adequately consider whether the denial of James's habeas petition was appropriate; after further analysis is performed, there will be new evidence for the district court to consider in evaluating his habeas petition. Thus, the district court's decision in Docket No. 80907 regarding James's postconviction petition for a writ of habeas corpus is vacated, and the matter is remanded for further proceedings to follow the reception of the genetic marker analysis results.

## CONCLUSION

The district court erred in concluding that the CODIS match would have been inadmissible and denying James's petition requesting a genetic marker analysis on this basis. We thus reverse the decision in Docket No. 80902. We further conclude that because the district court erred

in denying the petition requesting a genetic marker analysis, the district court's decision in Docket No. 80907 regarding the habeas petition must be vacated. These matters are remanded for further proceedings on both petitions.

_____, J.
Herndon

We concur:

_____, J.
Cadish

_____, J.
Pickering

Supreme Court
of
Nevada

(O) 1947A