JAMES RICHARD COX, aka JOHN KING, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 16432

June 26, 1986                    721 P.2d 358

*Morgan D. Harris,* Public Defender, and *Gary H. Lieberman,* Deputy Public Defender, Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Following a jury trial, appellant James Cox was convicted of one count of attempted sexual assault. On appeal he raises two assignments of error: (1) the district court erred by excluding evidence that the complainant applied for a license as an escort shortly after the alleged incident occurred; and (2) the prosecutor improperly expressed to the jury her personal opinion of appellant's guilt. We agree with both of these contentions and hold that reversal is warranted.

The complainant's version of the incident differs markedly from Cox's. According to the complainant, she went to Cox's apartment to borrow money from Mrs. Cox. Upon entering the apartment, she discovered that Mrs. Cox was not home, and waited a few minutes for her return. The complainant testified that as she attempted to leave, Cox grabbed her, and a thirty minute struggle ensued. During the struggle, Cox unzipped his pants and partially undressed her. Eventually a teenager (Daniel Di Gennaro) and a neighbor (Dale Landreth) responded to her screams and forced open the door, allowing her to flee the apartment.

Di Gennaro testified that he heard screams, went to the apartment and saw a woman holding on to the bottom of the door. He ran outside the complex and asked someone to call the police. Then he returned to the apartment and saw Landreth trying to force open the door. He saw the complainant lying on the floor

with Cox sitting on top of her and trying to pull her away from the door. When she ran out of the apartment, he noticed that her pants and shirt were open.

Landreth testified that he heard screams coming from Cox's apartment. He saw a black woman lying inside the apartment with her hands on the bottom of the door, trying to pull it open. He tried to push the door open but could not, due to a force on the inside. Shortly after Di Gennaro arrived, the force subsided and the door opened. The complainant's blouse was raised, and Landreth could not tell if she was wearing anything under her blouse. Due to poor eyesight, Landreth cannot see at all beyond three to five feet.

One of the police officers who responded testified that the complainant's fingers were swollen, and that there were marks on her neck which appeared to be caused by fingernails or a tight grip of the hand. Another neighbor, William Butler, testified that he saw no scratches or bruises on the complainant a few minutes after the incident. He also testified that the complainant whispered to him, "Tell Brenda [Mrs. Cox] I didn't mean this to happen." Three witnesses stated their opinion that the complainant was an untruthful person.

Cox's defense was that the complainant invented her allegations of assault after he refused to give her money. He testified that she first asked to borrow money; when he refused, she put her hand on his leg and said, "for ten or twenty dollars I'll do you right" or "make it right for you."[1] According to Cox, he told her to leave, and when she continued to make such statements he tried to push her out of the apartment. She chained the door, and they struggled for four to five minutes, with him attempting to open the door.[2] When she saw the teenager in the hall, she screamed, "Rape . . . help me. . . ."

Undisputed evidence at trial established that the complainant demanded and received $450.00 from Mrs. Cox as an inducement to drop the charges against her husband.[3] However, because Mrs. Cox refused to pay additional sums demanded by the complainant, the case was pursued.

At his trial, Cox attempted to introduce evidence that the complainant had applied for an escort license shortly after the

---

[1] The complainant was aware that Cox had been unable to achieve an erection since he was involved in an automobile accident approximately one year prior to the incident. The State did not refute the evidence of Cox's impotence.

[2] The automobile accident left Cox partially disabled. Eight witnesses, including a physician and five women, testified that he could be easily pushed aside. There was testimony that Cox would be unable to engage in a struggle such as that described by the complainant.

incident. The court ruled that this evidence was inadmissible, concluding that Cox's failure to make a pretrial motion under NRS 48.069 barred the introduction of the evidence.[4] On appeal, Cox contends that the district court erred by excluding the evidence. We agree. Specifically, we note that NRS 48.069 only applies to cases in which evidence of prior sexual conduct is offered to prove that a victim of a sexual assault consented to the assault. In this case, Cox was not attempting to use this evidence to prove consent, since he steadfastly maintained that the offense never occurred. NRS 48.069 was therefore inapplicable.

The lower court also concluded that the evidence was "more prejudicial than probative." The State contends that this ruling justifies exclusion of the evidence under NRS 48.035 because it does not necessarily follow that an applicant for an escort license will be more likely to solicit prostitution.[5] However, the trial court's conclusion in this regard fails to consider Cox's rights under the confrontation clause.

The confrontation clause of the Sixth and Fourteenth Amendments to the United States Constitution guarantees a criminal defendant the right to confront his accusers and the opportunity to demonstrate the existence of a possible bias or prejudice of a witness in support of the defendant's theory of the case. Davis v. Alaska, 415 U.S. 308, 317-18 (1974). This also includes a right to introduce evidence challenging the victim's credibility, in order to dispel an inference which the jury might otherwise draw from the circumstances. Summitt v. State, 101 Nev. 159, 697 P.2d 1374 (1985).

---

[3]Apparently, this was pursuant to negotiations made on behalf of the complainant by the district attorney's office. We find this conduct by the district attorney somewhat questionable.

[4]NRS 48.069 provides, in relevant part:

> Previous sexual conduct of victim of sexual assault: Procedure for admission of evidence to prove victim's consent. In any prosecution for sexual assault or for assault with intent to commit, attempt to commit or conspiracy to commit a sexual assault, if the accused desires to present evidence of any previous sexual conduct of the victim of the crime to prove the victim's consent:
> 1. The accused shall first submit to the court a written offer of proof, accompanied by a sworn statement of the specific facts that he expects to prove and pointing out the relevance of the facts to the issue of the victim's consent.

[5]NRS 48.035 provides, in pertinent part:

> (1) Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.

In this case, the jury heard evidence that the complainant was a born-again Christian and a former secretary at a local high school. It is possible that the jury found Cox's version of the incident unbelievable in light of this impression of the complainant's character. It is also possible that the jury might have been more inclined to believe Cox's allegations that the complainant offered him sex for money, and invented her allegations of assault to extort money, if the jury knew she was willing to work as an escort. The evidence was therefore relevant to appellant's theory of the defense and was therefore improperly excluded.

Cox's second claim of error relates to the prosecutor's comment during closing argument, that "I guarantee you . . . that I think you should find him guilty of attempted sexual assault." This constitutes a statement of personal opinion by the prosecutor regarding guilt, and was therefore clearly improper. *See, e.g.,* McGuire v. State, 100 Nev. 153, 159, 677 P.2d 1060, 1064 (1984); Owens v. State, 96 Nev. 880, 885, 620 P.2d 1236, 1239-40 (1980); Ellison v. State, 87 Nev. 4, 479 P.2d 461 (1971). It should be noted that we have previously admonished this same prosecutor concerning her interjection of her personal opinion of a defendant's guilt. We are not inclined to excuse such improper remarks when they cause multiple appeals to reach this court. *See generally* McGuire v. State, 100 Nev. at 160, 677 P.2d at 1065.

Based on the foregoing analysis, we conclude that the district court erred by refusing to admit evidence of the complainant's application for a license as an escort, and that the prosecutor committed misconduct. Because of the cumulative nature of this error and because we do not believe the evidence of appellant's guilt was overwhelming, reversal is warranted. Accordingly, we reverse the judgment of conviction and remand for a new trial consistent with the dictates of this opinion.