NORMAN EARL JOHNSON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 27001

July 15, 1997                          942 P.2d 167

*Thomas C. Naylor,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, *James N. Tufteland,* Chief Deputy District Attorney, and *Mary K. Holthus,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SHEARING, C. J.:

On February 3, 1994, Nicole, a seventeen-year-old Las Vegas high school student, ran away from home. Nicole's friend Heather Collins ("Heather"), who was then living at the family home of her boyfriend David Miller ("David"), agreed to let Nicole stay with them. Subsequently, David's mother, Ms. Nellie Miller ("Ms. Miller"), sent Nicole to stay with Ms. Miller's daughter Donna. Donna lived in North Las Vegas with her fiancé, appellant Norman Johnson ("Norman").

Nicole's first night at Norman and Donna's apartment apparently passed without incident. The following night, David and Heather spent the evening in the apartment with Nicole. According to Nicole's testimony, Donna went to work at around 7:30 p.m. Norman, who did not work that day, was in and out of the apartment all evening. David, Heather, and Nicole watched television and drank beer. Nicole testified that David became quite intoxicated and tried to kiss her. Nicole testified that she drank only a few sips of the beer.

According to Nicole, after David and Heather retired to a

bedroom, Norman returned home. Norman's entrance awakened Nicole, who was sleeping on a couch in the living room. Nicole testified that Norman did not appear intoxicated. She further testified that Norman sat down next to her, put his hand on her, and stated, "I'm not going to bite you." Nicole rose from the couch and proceeded down a short hallway toward the back bedroom. She intended to go to sleep.

Norman then grabbed Nicole, forced her to the ground, removed her clothing and a tampon, and raped her in the hallway near the bedroom where David and Heather were sleeping. Norman pinned Nicole's arms over her head and also tried to place his penis in Nicole's mouth. Some time later, Nicole escaped Norman's grasp and ran into David and Heather's room. Nicole testified that she did not awaken David or Heather because she was "scared . . . [and] felt dirty."

Norman's version of the night's events is very different. He testified that he arrived home while David, Heather, and Nicole were still awake. Both Norman and David testified that Nicole was drunk. Norman testified that he watched David and Heather go to the bedroom, picked up his baby daughter off the couch, then spent the remainder of the evening in his room, and was only interrupted when David and he talked for a while at around midnight. After David left, Norman allegedly fell asleep and did not wake up until the following morning. According to Norman, he only encountered Nicole a few times that night, and his only physical touching of her was when he and David picked up the staggering, intoxicated Nicole and put her in the second bedroom.

The next morning Nicole told Heather her account of the previous night's events. David also learned of the alleged incident and moved Nicole to his other sister's house for the next several days. According to Nicole's mother, David told her that Norman had bragged that he had "devirginized" Nicole and "stuck her."

About five days after the incident, Shane Robb, a Las Vegas police officer and friend of Nicole's parents, found Nicole. He took Nicole to a facility for runaways. There, after inquiries by intake personnel, Nicole admitted that she had been raped. She later recounted the events to several police officers and identified Norman in a photo lineup.

On February 24, 1994, Nicole received an examination by a sexual abuse team. Dr. Ellis Olson, a physician on that staff, determined by using a sophisticated camera-type instrument that hymenal tearing in Nicole's vagina was consistent with an object, perhaps a penis, penetrating that area. He also stated that Nicole's injuries were those normally found in "somebody who has not been penetrated in the past."

A preliminary hearing took place on June 20, 1994. During cross-examination, Nicole testified that she was "touched" by "Uncle Jeff," a friend of her mother's, when she was nine or ten years old. It appears that defense counsel also attempted to introduce a police report that made reference to the "Uncle Jeff" incident, but Judge Kelly refused to admit it. After Nicole testified that she had filed a sexual abuse claim against "Uncle Jeff" in 1993, the defense ended this line of inquiry.

On October 24, 1994, the trial commenced. Nicole and Norman testified. The only nontestimonial evidence of the alleged event presented during trial was a video, displayed and explained to the jury by Dr. Olson, showing Nicole's inner-vaginal hymenal tearing.

There is some indication that the district court made non-transcribed rulings both before and during the trial attempting to exclude any reference to the alleged "Uncle Jeff" incident and to allegations that Nicole's stepfather had abused her. Despite any such rulings that might have been made, Ms. Miller testified that Nicole had admitted that she was sexually assaulted by her stepfather and uncle. Immediately after this testimony, a non-transcribed bench conference was held. After the conference, the trial judge did not direct the jury to disregard Ms. Miller's statement or strike that testimony from the record.

In later testimony, Nicole denied that she had been sexually or physically abused by her stepfather. Nicole's mother denied that her husband (Nicole's stepfather) had physically abused Nicole.

After David and Ms. Miller had testified, Nicole was recalled to the stand. She testified that she had never had sexual intercourse prior to February 4, 1994. Defense counsel did not object to this testimony or attempt to challenge this assertion during cross-examination. During closing arguments, the prosecutor argued that Nicole had voluntarily waived the protections of the rape shield law. The defense did not object to that statement.

The jury returned guilty verdicts on the sexual assault count based on the sexual penetration and on the count of attempted sexual assault for Norman's attempts to place his penis in Nicole's mouth. The district court sentenced Norman to twenty years on the sexual assault charge and ten years on the attempted sexual assault charge, to run concurrently. Norman filed a timely notice of appeal.

## DISCUSSION

Norman contends that his conviction should be reversed because the district court improperly excluded testimony regarding the prior sexual experience of Nicole. His contention lacks merit.

First, appellant failed to preserve a record of the proceedings in which the district court allegedly refused to admit any evidence concerning Nicole's alleged prior sexual conduct with "Uncle Jeff" and her stepfather. It is appellant's responsibility to make an adequate appellate record. Carson Ready Mix v. First Nat'l Bk., 97 Nev. 474, 476, 635 P.2d 276, 277 (1981). We cannot properly consider matters not appearing in that record. *Id.*, 635 P.2d at 277. The record does not properly establish any lower court error which has been preserved for appellate review respecting the district court's review of the "Uncle Jeff" and stepfather evidence. *See id.* at 477, 635 P.2d at 278 (appellant failed to preserve for appeal its claims of error where no adequate record of nontranscribed *in camera* hearing existed). Appellant had available the procedure outlined in NRAP 10(c) for establishing a record of unreported hearings, but failed to utilize it.

Second, even if the district court had limited evidence of prior sexual experience, the judge had the authority to do so. The decision to admit or exclude evidence is within the sound discretion of the district court. Greene v. State, 113 Nev. 157, 166, 931 P.2d 54, 60 (1997).

NRS 50.090 provides, in pertinent part:

> In any prosecution for sexual assault . . . , the accused may not present evidence of any previous sexual conduct of the victim of the crime to challenge the victim's credibility as a witness unless the prosecutor has presented evidence or the victim has testified concerning such conduct, or the absence of such conduct, in which case the scope of the accused's cross-examination of the victim or rebuttal must be limited to the evidence presented by the prosecutor or victim.

Among the purposes of this rape shield law are to " 'protect rape victims from degrading and embarrassing disclosure of intimate details about their private lives . . . [and to] encourage rape victims to come forward and report the crimes and testify in court protected from unnecessary indignities and needless probing into their respective sexual histories.' " Summitt v. State, 101 Nev. 159, 161, 697 P.2d 1374, 1375 (1985) (citations omitted).

While Nicole's preliminary hearing testimony indicates that she may have been molested, there is no evidence in the record to support the proposition that Nicole was sexually penetrated by her "Uncle Jeff" or her stepfather. Consequently, the "Uncle

Jeff'' and stepfather evidence was of no probative value in challenging Nicole's claims that she had never had sexual intercourse prior to February 4, 1994. Given these circumstances, we conclude that this prior sexual conduct evidence was irrelevant and should have been properly excluded under NRS 50.090. This is not a case where Nicole's knowledge or lack of knowledge is relevant as in Summitt v. State, *supra*. The only question was the credibility of Nicole in stating that she was a virgin until the night of the attack. The jury heard contradictory evidence and chose to believe Nicole.

NRS 50.090 permits the defense to challenge a victim's claims of the absence of previous sexual conduct; however, "the accused's cross-examination of the victim or rebuttal must be limited to the evidence presented by the prosecutor or victim." Consequently, once Nicole testified that she had never had sexual intercourse prior to the night of the rape, the defense had the right to attempt to discredit this testimony by showing that Nicole was not a virgin. However, counsel did not cross-examine Nicole on this issue, attempt to introduce any evidence to challenge Nicole's statement, or make any relevant objection on the record in this matter. The defense may not use the appellate courts to relitigate strategic decisions made during trial.

The third and most important reason that Norman's contentions regarding exclusion of evidence are without merit is that evidence of both the stepfather and "Uncle Jeff" incidents was presented to the jury. Ms. Miller testified that Nicole allegedly revealed that she had been sexually assaulted by her stepfather and uncle. The judge did not direct the jury to disregard this testimony. Thus, the jury was made aware of Nicole's alleged prior sexual contacts and nevertheless chose to believe Nicole. Accordingly, we conclude that Norman's argument lacks merit.

We conclude that Norman's remaining contentions are without merit or not appropriate for consideration on direct appeal and thus we affirm the jury verdict and sentencing in all respects.

YOUNG and MAUPIN, JJ., concur.

ROSE, J., with whom SPRINGER, J., joins, dissenting:

The prosecution presented a runaway teenager as a virgin whom appellant sexually assaulted, causing a hymenal tear. The jury was shown a photograph of the tear that had been taken with a sophisticated medical camera. The examining physician stated

that a penis could have caused this damage and that the injury is normally found in "somebody who has not been penetrated in the past." Therefore, the issue of the victim's virginity was placed in issue by the victim and the prosecution.

At the preliminary hearing, the victim testified that she had been sexually assaulted by "Uncle Jeff" when she was nine or ten years old and had filed a criminal charge against him in 1993. The defense attempted to introduce a police report that documented the incident, but the justice of the peace refused its admission or any further evidence of the prior sexual assault, other than the fact that it had occurred, because of the rape shield law.

Norman's counsel represents that at trial he wanted to introduce the "Uncle Jeff" sexual assault to counter the victim's claims of virginity, but was precluded by the district judge. Unfortunately, there is no record of this hearing or of the district judge's ruling that refused to let in the "Uncle Jeff" evidence. However, Norman's counsel attempted to question Nellie Miller, the mother of Donna Miller (who was engaged to Norman), regarding whether the victim had ever told Miller that she had been sexually assaulted. After Miller stated that the victim had told her that she had been sexually assaulted both by her stepfather and her mother's friend, presumably "Uncle Jeff," the prosecution objected, and an unreported conference was held at the bench. After the conference, Norman's counsel asked Miller questions regarding whether the victim had told her that she had been subjected to verbal and physical abuse, but not sexual abuse, by her father, and no questions were asked regarding what the victim had told her about the sexual assault committed by "Uncle Jeff." The logical inference is that the judge instructed Norman's counsel that the victim's sexual history was inadmissible pursuant to the rape shield law. This inference was bolstered by the fact that Norman's counsel did not cross-examine the victim after the victim testified that she was a virgin, even though the victim had testified at the preliminary hearing that she had been sexually assaulted by "Uncle Jeff" when she was nine or ten years of age.

The result of all of this was that the jury was left with an untruth, based on the victim's preliminary hearing testimony, that the victim had never been sexually penetrated, whether voluntarily or involuntarily, and had no independent knowledge of similar sexual acts. Furthermore, Norman was denied the opportunity to prove that the graphic hymenal tear shown to the jury in a photograph could well have been caused by "Uncle Jeff." The prosecutor also argued to the jury that the victim had waived the

protection of the rape shield law when just the opposite was apparently true.

This was a close case that hinged on the credibility of the accuser and the accused. There was no corroborating evidence other than the photo and the fact that both were at the apartment on the evening that the incident allegedly occurred. The victim testified that the attack took place right outside the bedroom of her friends and that she screamed repeatedly. However, the friends heard nothing that evening and were surprised when the victim told them the next morning that she had been raped. The male friend stated that when he went to bed, the victim was intoxicated and had been kissing him. Although this evidence was also initially disallowed by the district judge, it was eventually presented to the jury.

The case of Summitt v. State, 101 Nev. 159, 163, 697 P.2d 1374, 1377 (1985), is strikingly similar to this case, and I believe it mandates reversal. In *Summitt*, the defendant sought to introduce evidence that the six-year-old victim had been sexually assaulted previously in order to show that, despite her young age, the victim had independent knowledge of similar sexual acts. *Id.* at 163-66, 697 P.2d at 1375-77. The testimony was thus offered for the limited purpose of challenging her credibility by dispelling certain inferences related to her youth; the remaining evidence of guilt was not strong, and the accuracy and truthfulness of the victim's testimony were key elements in the case against the defendant. *Id.* at 163-66, 697 P.2d at 1377. This court held that the district court's exclusion of this testimony constituted reversible error requiring a new trial. *Id.* I find no fundamental distinction between *Summitt* and the case at bar.

Furthermore, the testimony regarding "Uncle Jeff's" (and the stepfather's) sexual assaults was admissible because it was used to show that somebody other than Johnson caused the damage, not to prove that the victim consented to the sexual activity. *See* Cox v. State, 102 Nev. 253, 256, 721 P.2d 358, 360 (1986) (NRS 48.069 applies only to cases in which evidence of prior sexual conduct is offered to prove that a victim consented to sexual activity). Furthermore, under this theory that "Uncle Jeff" or the stepfather caused the damage, the evidence was not precluded by NRS 50.090, because it was not offered to challenge the victim's credibility.

However, the evidence was also admissible to challenge the victim's credibility as a witness pursuant to NRS 50.090, which authorizes such a use if the witness has testified to such conduct. The victim testified at trial that she was a virgin. Therefore, Norman's counsel should have been permitted to cross-examine

the victim regarding her testimony at the preliminary hearing that she had been sexually assaulted by "Uncle Jeff."

Accordingly, I would reverse this case and remand it to the district court for a new trial because important, reliable evidence that would have attacked the victim's credibility was not presented to the jury.