IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANKLIN E. SANCHEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77457

FILED

JUL 2 0 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of possession of a stolen vehicle and stop required on the signal of a police officer with endangerment. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge. Appellant Franklin Sanchez raises four main contentions on appeal.

First, Sanchez argues that the district court committed structural error in denying his fair-cross-section challenge without hearing testimony from the jury commissioner. The burden of demonstrating a prima facie violation of the fair-cross-section requirement rested with Sanchez to show (1) that the group allegedly excluded is "distinctive"; (2) that the representation of that group in the venire was not fair and reasonable in relation to the number of such people in the community; and (3) that the "underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 275 (1996) (internal quotation marks and emphases omitted).

Sanchez alleged that Hispanics were underrepresented because they comprised only 17.8% of his venire but 30%[1] of the population of Clark County. The parties agree, and our previous rulings support, that Hispanics are a "distinctive group," *see Valentine v. State*, 135 Nev. 463, 465, 454 P.3d 709, 714 (2019), such that Sanchez has satisfied the first prong for a prima facie violation. Under the second prong, the determination of "[w]hether a certain percentage [of minority jurors] is a fair representation of a group is measured by the absolute and comparative disparity between the actual percentage in the venire and the percentage of the group in the community." *Williams v. State*, 121 Nev. 934, 940 n.9, 125 P.3d 627, 631 n.9 (2005). Here, the absolute disparity between the representation of Hispanics in Sanchez's venire amounted to 12.2% and the comparative disparity was 41%. These disparities do not demonstrate underrepresentation. *See Morgan v. State*, 134 Nev. 200, 208, 416 P.3d 212, 222 (2018) (holding that a comparative disparity of 43.2% "failed to sufficiently show underrepresentation"); *Evans*, 112 Nev. at 1187, 926 P.2d at 275 (providing that a comparative disparity under 50% is likely insufficient to show underrepresentation). Because Sanchez did not satisfy the second prong for a fair-cross-section challenge, we decline to consider his argument on the third prong.[2] *See Morgan*, 134 Nev. at 208, 416 P.3d

---

[1]We use the percentage provided by Sanchez since both the State and the district court accepted it during trial.

[2]For this same reason, we need not address his allegation that the district court should have allowed him to call the jury commissioner to support his systemic-exclusion arguments, as that is only relevant to the third prong of the test.

at 222 (providing that an appellant's failure to show underrepresentation "proves fatal" for a fair-cross-section claim, thus "analysis of the third prong is unnecessary"). Therefore, Sanchez was not entitled to a new venire, and the district court did not abuse its discretion by denying his challenge. *See Valentine*, 135 Nev. at 464, 454 P.3d at 713 (reviewing the denial of a requested evidentiary hearing for an abuse of discretion).

Second, Sanchez argues that the district court erred by failing to excuse four prospective jurors for cause. A prospective juror should be removed for cause if his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (further internal quotation marks omitted)). Two of the prospective jurors challenged by Sanchez did not end up on the jury, and thus reversal is not an available remedy even though Sanchez used preemptory challenges to remove them. *See Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996) (reiterating that claims of prejudice based on wasted preemptory challenges focus on the actually-impaneled jury's partiality). But the two other prospective jurors who Sanchez challenged for cause were seated on the jury. Sanchez pressed a for-cause challenge against Prospective Juror No. 181 because she expressed an inclination toward believing law enforcement testimony. But she also clarified that would only be true if there was evidence to support the testimony and she confirmed that she would not form an opinion until hearing all the evidence and would be "fair and impartial to both sides." *See Blake v. State*, 121 Nev. 779, 795, 121 P.3d 567, 577 (2005) (reiterating that even a juror who has expressed a preconceived bias about the case does not

need to be removed for cause where the record as a whole demonstrates that she could set aside her impressions or opinions and base a verdict on the presented evidence). We conclude that the district court did not abuse its discretion in denying Sanchez' cause challenge to Prospective Juror No. 181. *See Leonard*, 117 Nev. at 67, 17 P.3d at 406 (stating that the district court "has broad discretion in ruling on challenges for cause since these rulings involve factual determinations"). The record is silent, however, as to Sanchez' specific reasons for his cause challenge of Prospective Juror No. 251, the State's response, or the district court's reason for denying the challenge. Given his failure to develop an adequate record for appeal, we decline to consider Sanchez' argument as to this prospective juror. *See Grey v. State*, 124 Nev. 110, 120, 178 P.3d 154, 161 (2008) (recognizing that, in order to properly preserve an objection, a defendant must object at trial on the same ground he or she asserts on appeal); *Johnson v. State*, 113 Nev. 772, 776, 942 P.2d 167, 170 (1997) (explaining that matters not appearing in the appellate record cannot be properly considered and that it is the defendant's responsibility to develop that record for appeal).

Third, Sanchez argues that the district court erred in admitting, without a hearing, prior-bad-act evidence that he stole a car in Utah. We review the district court's determination to admit or exclude prior-bad-act evidence for an abuse of discretion. *See Chavez v. State*, 125 Nev. 328, 345, 213 P.3d 476, 488 (2009). To prove that Sanchez committed the charged offense of possession of a stolen vehicle, the State had to prove that Sanchez had possession of the vehicle and that he knew or had reason to believe that the car was stolen. NRS 205.273(1)(b). While at a body shop in Utah, Sanchez waved to an employee, who recognized Sanchez from the

previous day, then drove off in a car belonging to the body shop's owner. After the car was reported stolen, Utah police located Sanchez driving it and a chase ensued, ending in Nevada. Thus, Sanchez' acts immediately preceding him driving to Nevada, including uncharged crimes, were part of one extended criminal transaction and relevant to elements of the possession-of-a-stolen-vehicle charge. As such, the State was entitled to present that evidence. *See Dutton v. State*, 94 Nev. 461, 464, 581 P.2d 856, 858 (1978) (holding that the State is entitled to present evidence necessary to prove the charged crime and finding no error by the district court admitting evidence to show the defendant's "knowledge of the stolen character of the goods"), *disapproved on other grounds by Gray v. State*, 100 Nev. 556, 688 P.2d 313 (1984). And, law enforcement witnesses could not explain why they were pursuing the vehicle without describing the stolen car information reported in Utah. *See State v. Shade*, 111 Nev. 887, 894, 900 P.2d 327, 331 (1995) (determining "whether witnesses can describe the crime charged without referring to related uncharged acts" to decide whether to admit evidence as res gestae); *Allan v. State*, 92 Nev. 318, 320-21, 549 P.2d 1402, 1403 (1976) (admitting as res gestae or "same transaction" evidence testimony regarding additional criminal acts because it "complete[d] the story of the crime charged by proving the immediate context of happenings near in time and place"). Accordingly, we conclude that the district court did not abuse its discretion in admitting the evidence without holding a *Petrocelli* hearing. *See Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 180 (2005) (indicating that the district court is not required to hold a *Petrocelli* hearing when it admits res gestae evidence).

Fourth, Sanchez argues that the district court erred by denying his motion to dismiss the indictment or exclude untimely-disclosed evidence when the State violated statutory discovery requirements and, thereby, violated Sanchez' state and federal constitutional rights. The district court has broad discretion to fashion a remedy when a party alleges that another party has failed to comply with discovery requirements and we will not find an abuse of discretion under such circumstances unless it is shown that the State acted in bad faith or the non-disclosure resulted in substantial prejudice to the accused. *Jones v. State*, 113 Nev. 454, 471, 937 P.2d 55, 66 (1997).

After providing discovery and timely filing its initial disclosure of experts and notice of witnesses, the State filed a supplemental notice disclosing several additional lay witnesses and a DNA expert four days before trial. Around this same time, the State also disclosed a DNA report, other documents, and additional photographs. The record supports that the State disclosed these items to Sanchez as soon as it received them. Both before and during trial, Sanchez requested that the district court either dismiss the indictment or refuse to admit the State's late-disclosed evidence, particularly where he invoked his speedy trial right and the State previously announced trial readiness. The district court denied Sanchez' requests and allowed the evidence's admission, finding that the State did not act in bad faith, but rather practiced due diligence in getting the items to Sanchez. Instead, the court granted a two-week continuance, even though Sanchez insisted against a continuance. The continued trial was set within the 60 days required by Sanchez' speedy trial invocation, and the district court found this alleviated any prejudice to Sanchez.

We conclude that the district court did not abuse its discretion because the State complied with its statutory obligations in filing the supplemental witness list and expert notice, as well as when it provided additional materials.[3] *See* NRS 174.234(3)(a) (providing that, after complying with NRS 174.234(1) and (2), the parties have a continuing duty to provide additional witness information "as soon as practicable after the party determines that the party intends to call an additional witness during [its] case in chief"); NRS 174.295 (providing that a party shall promptly notify the other party upon discovering additional materials subject to disclosure). Indeed, the State represented that because the trial was set in such short course (31 days from arraignment), it did not initially disclose a DNA expert because it did not expect to have DNA results back before trial. *See Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 243, 256-57 & n.9, 235 P.3d 592, 601 & n.9 (2010) (approving of, in the context of a discovery dispute, the district court's reliance on "factual representations made by the attorneys, as officers of the court," and citing an attorney's duty of candor under RPC 3.3).

---

[3]The State timely filed its initial witness list and expert notice on June 26, 2018, 27 days before the first trial setting of July 23, 2018. *See* NRS 174.234(1)(a)(2) (requiring the State to give written notice of intended case-in-chief witnesses' names and addresses within not less than 5 judicial days before trial); NRS 174.234(2) (same except not less than 21 days before trial for expert witnesses).

Additionally, the State did not violate Sanchez' constitutional rights where it provided the additional materials before trial,[4] which the district court continued to give Sanchez additional time to review them. Further, Sanchez does not proffer either the efforts he made to retain an expert to rebut the State's DNA findings or specifically how a rebuttal expert's testimony could have affected the verdict. *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976) (explaining that the mere possibility that disclosure of a piece of evidence may have affected the outcome of the trial does not establish materiality); *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976) (describing the inquiry on appeal for late disclosure of evidence as "whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial"). Accordingly, Sanchez has not presented a basis for reversal on this issue.[5] *See Jones*, 113 Nev. at 471, 937 P.2d at 66.

In this same vein, Sanchez contends that the district court erred in denying his mistrial motion after the stolen-vehicle victim's

---

[4]Sanchez' *Brady* argument fails for this reason and because the DNA materials were not exculpatory. *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (reiterating that *Brady* violations involve *withheld* evidence and ask if such was favorable to the accused and material).

[5]We decline to address the other discovery as Sanchez' due process arguments only generally reference the late-disclosed lay witnesses and other documentary items—he analyzes and elaborates only on the DNA evidence and related expert witness. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

testimony implied that Sanchez stole his car keys. Specifically, Sanchez argues that he did not have good contact information for the victim; this trial testimony differed from the victim's preliminary hearing testimony; and the State knew, but did not disclose, that the victim would testify this way. These arguments lack merit where the record does not support that the victim relayed this specific detail to the State, nothing prohibited Sanchez from interviewing the victim ahead of time or impeaching him during trial, and the State's witness disclosures and discovery materials included the victim's contact information. *See* NRS 51.035(2) (allowing for the admissibility of prior inconsistent statements for impeachment purposes); *Steese v. State*, 114 Nev. 479, 495, 960 P.2d 321, 331 (1998) (concluding that the State is not required to "disclose evidence which is available to the defendant from other sources, including diligent investigation by the defense").

Having concluded no relief is warranted, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Gibbons

_____, J.          _____, J.
Stiglich                                              Silver

cc:   Hon. Joseph Hardy, Jr., District Judge
      Clark County Public Defender
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk