138 Nev., Advance Opinion 16

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF BRECK WARDEN SMITH FOR A WRIT OF HABEAS CORPUS. | No. 82696 |
| THE STATE OF NEVADA, Appellant, vs. BRECK WARDEN SMITH, Respondent. | **FILED** MAR 24 2022 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, and Katrina A. Samuels, Deputy Attorney General, Carson City,
for Appellant.

McAvoy Amaya & Revero Attorneys and Michael J. McAvoy-Amaya and Timothy E. Revero, Las Vegas,
for Respondent.

Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas; Sharp Law Center and A.J. Sharp, Las Vegas; The Powell Law Firm and Tom W. Stewart, Las Vegas,
for Amicus Curiae Nevada Justice Association.

SUPREME COURT
OF
NEVADA

(O) 1947A

22-09216

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

*OPINION*

By the Court, SILVER, J.:

When a parolee is detained for a parole violation and returned to the custody of the Nevada Department of Corrections (NDOC), NRS 213.1517(3) requires the Nevada Board of Parole Commissioners (the Parole Board) to hold a hearing on the matter within 60 days. NRS 213.1517(4) sets out an exception to this 60-day rule when the parolee is detained on a new criminal charge but not returned to NDOC until after the final adjudication of that new charge. At issue in this appeal is whether subsection 4's exception applies where the Parole Board executes a warrant to return the parolee to NDOC *before* the final adjudication on the new criminal charge. We conclude that the parolee's return to NDOC pursuant to a warrant triggers subsection 3's 60-day hearing requirement. We therefore determine that the district court here correctly applied NRS 231.1517 and ordered the Parole Board to credit respondent for the time he spent incarcerated pending adjudication on his new criminal charges.

*FACTS*

In 2008, respondent Breck Smith was adjudicated as a habitual criminal and sentenced to serve a prison term of ten years to life. He was released on parole in March 2017. One year later, in March 2018, he was arrested on new criminal charges of attempted burglary and possession of burglary tools and remanded into the custody of the Clark County Sheriff. As a result of his new arrest, he was incarcerated at the Clark County Detention Center.



Soon after, the Division of Parole and Probation issued parole violation reports based on the new criminal charges. Based on the new arrest report, the Division found probable cause for the parole violation. On April 11, 2018, the Parole Board issued a retake warrant that resulted in Smith being remanded back into the custody of NDOC. Although Smith was remanded into NDOC's custody and physically incarcerated in the prison, Smith's parole revocation hearing was continued for over a year, until June 25, 2019, the day after Smith entered an *Alford*[1] plea to the new attempted burglary charge. On that date, the Parole Board revoked Smith's parole for one year, until July 1, 2020. Because Smith received a consecutive sentence on his new charge, he did not begin serving his new sentence until July 2, 2020, after he was paroled on the previous charges.

In January 2021, Smith filed an emergency petition for a writ of habeas corpus, arguing that under NRS 213.1517, the Parole Board exceeded its authority by immediately returning Smith to NDOC's custody but deferring the parole revocation hearing until he pleaded guilty on the new criminal charges—far beyond the 60 days allowed by that statute. Because he was not given proper credit for any time served after the 60-day statutory period, he claimed that he effectively lost over a year of credit for time served due to him on his parole violation case. The district court agreed and ordered NDOC to ensure Smith was awarded flat time and statutory credit from June 12, 2018, to June 17, 2019—the dates by which his parole revocation hearing should have been held and his one-year parole revocation penalty would have expired, respectively. The State appeals, arguing that NRS 213.1517(4) creates an exception to the 60-day statutory

---

[1]*North Carolina v. Alford*, 400 U.S. 25 (1970).

rule that allowed the Parole Board to defer the parole revocation hearing to after Smith entered his *Alford* plea on the new criminal charges.

*DISCUSSION*

We review questions of statutory interpretation de novo, giving the statute its plain meaning unless doing so would create an unreasonable result. *Moore v. State*, 136 Nev. 620, 622-23, 475 P.3d 33, 36 (2020); *Lofthouse v. State*, 136 Nev. 378, 380, 467 P.3d 609, 611 (2020). We will avoid interpretations that would render words or phrases superfluous or nugatory. *Harvey v. State*, 136 Nev. 539, 543, 473 P.3d 1015, 1019 (2020).

Before the Parole Board may revoke parole, a parolee is entitled to a parole revocation hearing. *See Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972). Minimal due process requires that this hearing "be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488; *see also Scarbo v. Eighth Judicial Dist. Court*, 125 Nev. 118, 124, 206 P.3d 975, 979 (2009) (explaining the due process protections of the United States and Nevada Constitutions require an opportunity to be heard where a liberty interest is at stake). This is so because the execution of a parole violation warrant, and custody under that warrant, together are "the operative event triggering any loss of liberty attendant upon parole revocation." *Moody v. Daggett*, 429 U.S. 78, 87 (1976).

To this end, the Legislature established that where probable cause exists for a parolee's detention, the Parole Board must conduct the parole revocation hearing within 60 days after a parolee is returned to NDOC's custody. NRS 213.1517(3). NRS 213.1517(4) provides an exception to that rule:

> If probable cause for continued detention of a paroled prisoner is based on conduct which is the subject of a new criminal charge, the Board may consider the prisoner's case under the provisions of

subsection 3 or defer consideration until not more than 60 days after his or her return to the custody of the Department of Corrections following the final adjudication of the new criminal charge.

The State argues that under subsection 4, where a parolee is detained on new criminal charges, the Parole Board may defer the parole revocation hearing up to 60 days after the final adjudication on the new criminal charges, even where, as here, the parolee is in NDOC's custody pending the adjudication. Smith counters that subsection 4's exception to the 60-day requirement applies only where the parolee remains in local custody pending adjudication on the new charges and returns to NDOC after that adjudication.

We read NRS 213.1517 with a due process overlay and are persuaded by Smith's arguments. NRS 213.1517(4) provides that where the probable cause for the parolee's continued detention is based on conduct underlying a new criminal charge, the Parole Board may either conduct the revocation hearing in accordance with subsection 3—return the parolee to NDOC's custody and hold the hearing within 60 days—*or* defer the revocation hearing until no later than 60 days after the parolee's return to NDOC's custody following final adjudication of the new charge. The phrase "following the final adjudication of the new criminal charge" in subsection 4 attaches to the phrase "after [the parolee's] return to the custody of the Department of Corrections," creating separate and sequential requirements here: final adjudication on the new charges, followed by a return to NDOC's custody. And because each of these conditions must be met to defer consideration under subsection 4, it follows that subsection 4's exception will not apply where the Parole Board executes a warrant and returns the parolee to NDOC's custody *before* adjudication on the new charges. This interpretation avoids rendering the phrase "after [the parolee's] return to

the custody of the Department of Corrections" superfluous. It also comports with due process considerations, as a parolee loses liberty once the parolee is taken into custody under the warrant and this loss triggers due process protections. *See Moody*, 429 U.S. at 87 (explaining that the trigger for the parolee's loss of liberty is the execution of the warrant and the return to custody); *Morrissey*, 408 U.S. at 487-88 (explaining that once a parolee is taken into custody, due process requires the Parole Board hold a hearing within a reasonable time).[2]

Here, the Parole Board issued a retake warrant in April 2018, at which point Smith was immediately remanded back into the custody of NDOC and returned to incarceration at the prison. His parole revocation hearing was continued until after adjudication on his new criminal charges in June 2019—well in excess of the 60 days allowed by NRS 213.1517. We therefore conclude that the Parole Board exceeded its authority under that statute and that the district court properly ordered NDOC to reflect a parole

---

[2]Although the State argued below that Smith requested the continuances of his parole revocation hearing and thus created the complained-of error, the State does not renew these arguments in its opening brief on appeal and, moreover, the State failed to provide us with a sufficient record to review that point. *See Cooper v. State*, 134 Nev. 860, 861 n.2, 432 P.3d 202, 204 n.2 (2018) (declining to consider an argument raised for the first time in the reply brief); *Johnson v. State*, 113 Nev. 772, 776, 942 P.2d 167, 170 (1997) ("It is appellant's responsibility to make an adequate appellate record. We cannot properly consider matters not appearing in that record." (citation omitted)). We note, however, that a petitioner may not leverage an error he or she invited or waived. *See Jeremias v. State*, 134 Nev. 46, 52-53, 412 P.3d 43, 50 (2018). Thus, where a parolee delays the revocation hearing by requesting continuances pending the outcome of the parolee's new criminal charges, neither due process nor NRS 213.1517 will require the Parole Board to hold the revocation hearing within 60 days of the parolee's return to NDOC.

revocation date of June 12, 2018, and to ensure that any credits, expiration date of his parole revocation case, and start date of the sentence for his new case reflect the June 12, 2018, parole revocation date.[3]

## CONCLUSION

When probable cause exists to detain a parolee, NRS 213.1517(3) requires the Board of Parole Commissioners to consider the parolee's case within 60 days of the date the parolee returns to the custody of the Department of Corrections. NRS 213.1517(4) provides an exception to the 60-day rule and allows the Parole Board to defer consideration until the parolee is adjudicated on the new criminal charge and subsequently returned to NDOC. Each of the conditions set forth in NRS 213.1517(4) must be met to defer consideration beyond 60 days from the date the parolee is returned to the custody of NDOC. Because, here, the Parole Board executed a retake warrant and returned Smith to the custody of NDOC before Smith's new criminal charges were adjudicated, this exception did not apply and the Parole Board exceeded its authority by deferring the revocation hearing beyond 60 days after Smith's return to the custody of

---

[3]We do not reach the State's arguments against the district court's remedy of ordering the recalculation of Smith's time, as the State neither raised its arguments below nor supports them with adequate authority on appeal. *See Jeremias*, 134 Nev. at 50, 412 P.3d at 48 ("The failure to preserve an error, even an error that has been deemed structural, forfeits the right to assert it on appeal."); *Mazzan v. Warden*, 116 Nev. 48, 75, 993 P.2d 25, 42 (2000) ("Contentions unsupported by specific argument or authority should be summarily rejected on appeal.").

NDOC. Accordingly, we affirm the district court order granting Smith's postconviction petition for a writ of habeas corpus.

_____ , J.
Silver

We concur:

_____ , J.
Cadish

_____ , J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A